[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15089
_____

D.C. Docket No. 2:11-cr-14016-KMM-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


versus


JESUS ROSALES-BRUNO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____
(June 19, 2015)

Before ED CARNES, Chief Judge, WILSON, Circuit Judge, and CORRIGAN,[*]
District Judge.

---

[*] Honorable Timothy J. Corrigan, United States District Judge for the Middle District of
Florida, sitting by designation.

ED CARNES, Chief Judge:

This is the second appeal to come before us involving a sentence imposed on Jesus Rosales-Bruno because of his conviction for illegally reentering the United States in violation of 8 U.S.C. § 1326.  In the first appeal we vacated his original sentence after concluding the district court had erred in finding that his prior Florida conviction for false imprisonment qualified as a "crime of violence" conviction for enhancement purposes under United States Sentencing Guidelines § 2L1.2(b)(1)(A)(ii).  United States v. Rosales-Bruno, 676 F.3d 1017, 1024 (11th Cir. 2012) (Rosales-Bruno I).  That error had increased Rosales-Bruno's advisory sentencing guidelines range to 70 to 87 months, and the district court had sentenced him to 87 months imprisonment.

On remand, the district court recalculated Rosales-Bruno's advisory guidelines range without the crime of violence enhancement, which lowered it to 21 to 27 months imprisonment.  After considering the sentencing factors in 18 U.S.C. § 3553(a), however, the court varied upward from the guidelines range, again imposing an 87-month prison term.  That sentence was 60 months above the high end of Rosales-Bruno's revised guidelines range but 33 months below the statutory maximum of 120 months imprisonment.  The sole issue in this appeal is whether that sentence is substantively unreasonable.

2

I.

On August 4, 2007, Rosales-Bruno attacked his girlfriend, Edith Rodriguez. He shoved her into a stove, and when she tried to leave he punched her in the back and caused her to fall. When she fell he grabbed her by the face and pinned her between two beds. He then took out a cigarette lighter and threatened to burn her with it. Rosales-Bruno was arrested for that violent conduct.

Two months later, in October 2007, while he was out on bond, Rosales-Bruno attacked Rodriguez again. After pulling their 18-month-old daughter out of her arms, he punched Rodriguez at least five times and forced her into his car. She struggled and managed to escape, but Rosales-Bruno chased her down, threatened to kill her, grabbed her by the hair, pulled some of it out, and started choking her with his arm. When employees at a nearby business heard Rodriguez's screams for help, Rosales-Bruno released Rodriguez but took the little girl with him when he fled from the scene.

In November 2007, an Indian River County, Florida court convicted Rosales-Bruno of assault and battery for the first attack on Rodriguez, sentencing him to fifteen days in jail and a year of probation. While awaiting trial for battering Rodriguez the second time, Rosales-Bruno failed to report to his probation officer, didn't complete required domestic-violence programs, and didn't pay probation fees. As a result, in April 2008, the court issued an arrest warrant

3

for his violation of probation.  Possibly because Rosales-Bruno's trial for charges arising from the second attack was scheduled for later in the month, that arrest warrant was not immediately served.  Rosales-Bruno was convicted of battery and false imprisonment for the second attack.  The court sentenced him to six months in jail and three years of probation.  A month later, a United States Immigration Judge ordered that Rosales-Bruno, a Mexican national, be removed to Mexico, and he was deported on May 17, 2008.

Sometime in 2010, Rosales-Bruno crossed the border back into the United States in Arizona and then made his way back to Florida.  In March 2011, he was arrested for violating probation on the April 2008 warrant.  While he was in custody, Immigration and Customs Enforcement agents found that Rosales-Bruno was illegally in the United States after having been deported.  As a result, he was indicted on one count of illegal reentry following deportation, in violation of 8 U.S.C. § 1326, the applicable penalty provision of which carried a statutory maximum sentence of 120 months.  See 8 U.S.C. § 1326(b)(1).  He pleaded guilty to that charge.

At his first sentencing for his illegal reentry conviction, Rosales-Bruno's presentence investigation report calculated his guidelines range as 70 to 87 months imprisonment.  That range resulted in part from a 16-level enhancement of Rosales-Bruno's base offense level under U.S.S.G. § 2L1.2(b)(1)(A)(ii) based on

4

the PSR's characterization of his 2008 Florida conviction for false imprisonment as a conviction for a "crime of violence." Rosales-Bruno objected to that enhancement, contending that a false imprisonment conviction was not categorically a crime of violence within the meaning of that enhancement. He had also pleaded guilty to battery in connection with the same incident that led to the conviction for false imprisonment but, as we noted in our earlier opinion, battery under Florida law is not categorically a crime of violence either. See Rosales-Bruno I, 676 F.3d at 1024 (citing Johnson v. United States, 559 U.S. 133, 138–44, 130 S. Ct. 1265, 1270–73 (2010)). The district court properly did not consider the battery conviction as a crime of violence for purposes of the § 2L1.2(b)(1)(A)(ii) enhancement.

At that first sentence hearing, Rosales-Bruno also objected to the facts alleged in ¶ 30 of the PSR, which were taken from the police report filed in connection with his arrest for the crimes of false imprisonment and battery. He asserted that the police report was hearsay and that it was an inaccurate account of the events leading up to his arrest. His hearsay objection challenged only the court's use of the police report's facts "for the purpose of determining whether the [false imprisonment] conviction [was] a crime of violence." Although he asserted that the report was not an accurate recitation of events, he conceded that the district court could consider the police report "for the purpose of the sentencing" except on

5

the issue of whether the § 2L1.2(b)(1)(A)(ii) crime of violence enhancement applied. Specifically, he said: "[I]t depends on what the Court is considering. The Court could review [the police report] for the purpose of the sentencing, but not for the purpose of determining whether the predicate conviction is a crime of violence." The district court overruled Rosales-Bruno's objections and sentenced him to 87 months imprisonment, the top of his guidelines range. He appealed that sentence, challenging the crime of violence enhancement he had received for his false imprisonment conviction.

We agreed with Rosales-Bruno's contention that false imprisonment under Florida law is not categorically a crime of violence. See Rosales-Bruno I, 676 F.3d at 1022. We also decided that the record did not establish that Rosales-Bruno's 2008 Florida false imprisonment conviction had been under a statutory alternative that qualifies as a crime of violence for purposes of § 2L1.2(b)(1)(A)(ii). Id. at 1023–24. For that reason, we vacated the sentence and remanded the case to the district court for resentencing without the crime of violence enhancement. Although we directed the court to consider the record and resentence Rosales-Bruno "in light of the 18 U.S.C. § 3553(a) factors," we "express[ed] no opinion . . . as to what sentence would now be appropriate." Id. at 1024. We did not rule out the court reimposing the same sentence on remand so long as it was

6

not based on treating Rosales-Bruno's false imprisonment conviction as a crime of violence under § 2L1.2(b)(1)(A)(ii).

Before Rosales-Bruno was resentenced, the probation office amended the PSR and recalculated his guidelines range without the 16-level crime of violence enhancement. The result was a range of 21 to 27 months. Even so, the district court imposed the same sentence as before, relying on the § 3553(a) factors to vary above the new guidelines range by 60 months. The court did so after conducting a full resentence hearing, during which it pointed to several factors supporting the upward variance under § 3553: (1) the history and characteristics of the defendant, (2) the need to promote respect for the law, (3) the need to provide adequate deterrence, (4) the nature and circumstances of the present offense, and (5) the need to protect the public. See 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(C).

In determining that an 87-month sentence was appropriate, the district court placed particular emphasis on Rosales-Bruno's criminal history. At the resentence hearing, the court read for the record the PSR's descriptions of several of Rosales-Bruno's prior convictions. Those descriptions detailed the crimes that led to his 2007 convictions for assault and battery and his 2008 convictions for false imprisonment and battery. Finally, the court read the PSR's list of Rosales-Bruno's 11 driving offense convictions, which included several DUI convictions.

7

Rosales-Bruno objected that the sentence was procedurally and substantively unreasonable.[1]  He contended that the court had placed "too much emphasis" on his prior convictions for false imprisonment, for assault, and for battery.  This is his appeal of the sentence imposed on remand.

## II.

The district court's task is to impose a sentence that will adequately (1) "reflect the seriousness of the offense," (2) "promote respect for the law," (3) "provide just punishment," (4) "afford adequate deterrence," (5) "protect the public from further crimes of the defendant," and (6) provide the defendant with any needed training and treatment in the most effective manner.  18 U.S.C. § 3553(a)(2).  The task is a holistic endeavor that requires the district court to consider a variety of factors:  (1) the nature and circumstances of the offense, (2) the defendant's history and characteristics, (3) the kinds of sentences available, (4) the applicable sentencing guidelines range, (5) pertinent policy statements of the Sentencing Commission, (5) the need to provide restitution to any victims, and (6) the need to avoid unwarranted sentencing disparities.  Id. § 3553(a).

---

[1] Whatever his procedural objections were, Rosales-Bruno has abandoned them by not raising them on appeal.  See Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 680 (11th Cir. 2014) (issues not briefed on appeal are abandoned); Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1330 (11th Cir. 2004) ("Any issue that an appellant wants [us] to address should be specifically and clearly identified in the brief. . . . Otherwise, the issue — even if properly preserved at trial — will be considered abandoned.") (quotation marks omitted).  As a result, substantive reasonableness is the only issue in this appeal.

As the governing statute makes clear, id., and as we have explained in an en banc opinion, the advisory guidelines range is but one of many considerations that a court must take into account in exercising its sentencing discretion. See United States v. Irey, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc). "We have not attempted to specify any particular weight that should be given to the guidelines range," id., and we have rejected "any across-the-board prescription regarding the appropriate deference to give the Guidelines." United States v. Hunt, 459 F.3d 1180, 1184 (11th Cir. 2006). "We [have] decided instead that, subject to review for reasonableness, sentencing courts may determine, on a case-by-case basis, the weight to give the Guidelines, so long as that determination is made with reference to the remaining section 3553(a) factors that the court must also consider in calculating the defendant's sentence." Irey, 612 F.3d at 1217 (quotation marks omitted). The Supreme Court has held that variances from the advisory guidelines range can sometimes be based on the sentencing judge's disagreement with whether a guideline properly reflects the § 3553(a) factors, a holding which indicates that the guidelines are not overly restrictive. See Kimbrough v. United States, 552 U.S. 85, 105–09, 128 S. Ct. 558, 572–75 (2007).

To arrive at an appropriate sentence, the district court must consider all of the applicable § 3553(a) factors. United States v. Shaw, 560 F.3d 1230, 1237 (11th Cir. 2009). That does not mean, however, that it must give all of the § 3553(a)

9

factors equal weight.  Instead, the sentencing court "is permitted to attach 'great weight' to one factor over others."  Id. (quoting Gall v. United States, 552 U.S. 38, 57, 128 S. Ct. 586, 600 (2007)).  The decision about how much weight to assign a particular sentencing factor is "committed to the sound discretion of the district court."  United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (quotation marks omitted).  And, importantly, "if the sentence is outside the Guidelines range, the [reviewing] court may not apply a presumption of unreasonableness."  Gall, 552 U.S. at 51, 128 S. Ct. at 597.

The abuse of discretion standard is not de novo review; it is, instead, deferential.  Because of that, when reviewing for an abuse of discretion we will sometimes "affirm the district court even though we would have gone the other way had it been our call."  Irey, 612 F.3d at 1189 (quotation marks omitted); see also, e.g., Ledford v. Peeples, 605 F.3d 871, 922 (11th Cir. 2010) (explaining that when reviewing for an abuse of discretion "the relevant question is not whether we would have come to the same decision if deciding the issue in the first instance," but instead "whether the district court's decision was tenable, or, we might say, 'in the ballpark' of permissible outcomes").  The Supreme Court has instructed us that when reviewing an out-of-guidelines sentence for reasonableness, we may:

> consider the extent of the deviation, but [we] must give due deference
> to the district court's decision that the § 3553(a) factors, on a whole,
> justify the extent of the variance.  The fact that the appellate court

10

might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

Gall, 552 U.S. at 51, 128 S. Ct. at 597.

The reason we give district courts so much discretion in making sentencing decisions is that they have great advantages over appellate courts when it comes to sentencing. One reason is that they do it and we don't. Because the district court conducts sentence hearings, it is in a better position to make sentencing determinations than we are. See id. As the Supreme Court has explained, "[t]he sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case" because he "sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." Id. at 51, 128 S. Ct. at 597 (quotation marks omitted).

Another advantage that district courts enjoy when it comes to sentencing is that they have far greater sentencing experience than appellate judges, many of whom have never sentenced a single defendant for a single crime. (At the time he resentenced Rosales-Bruno, the district court judge had twenty years federal sentencing experience.) On a related point, the Supreme Court has pointed out that district courts "see so many more Guidelines cases than appellate courts do." Id. at 52, 128 S. Ct. at 598 (quotation marks omitted). Appellate courts see only the sentences that are appealed. District courts also see the ones that are not.

11

Given the great advantages that district courts enjoy when it comes to deciding the proper sentence, it would be strange if we didn't review the substantive reasonableness of the sentences under a deferential abuse of discretion standard.  See id. at 51, 128 S. Ct. at 597.  Although the deference we afford district courts in this area is not unlimited, it is substantial.  Irey, 612 F.3d at 1191.  We cannot — because the Supreme Court has held that we must not — presume that a sentence falling outside the advisory guidelines range is unreasonable.  See Gall, 552 U.S. at 51, 128 S. Ct. at 597.  If we did presume an out-of-guidelines-range sentence was unreasonable, the advisory guidelines would not be advisory.  That the guidelines are in reality only advisory is made unmistakably clear by the fact that in the most recent year for which data is available more than half — 54% — of the sentences imposed in federal court were outside the guidelines range.[2]  If sentencing outside the advisory guidelines range made a sentence

---

[2] See U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2014, Eleventh Circuit 11 tbl.8 (2015).  According to the Sentencing Commission, of the 74,126 cases that were sentenced in the 2014 fiscal year, 1,645 (2.2%) resulted in sentences above the guidelines range.  Id.  That total included 343 (0.5%) cases in which the sentence imposed involved a departure above the guidelines range; 1,104 (1.5%) that involved a variance above the guidelines range; 123 (0.2%) that involved both a departure and a variance above the guidelines range; and 75 (0.1%) in which the Sentencing Commission could not determine whether the above guidelines sentence resulted from a variance or a departure.

In another 38,364 (51.8%) of the cases the sentence imposed was below the guidelines range.  That number included 18,183 (24.5%) cases in which the court departed downward from the guidelines range; 12,894 (17.4%) cases in which the court varied downward from the guidelines range; 807 (1.1%) cases in which the report indicated both a departure and a variance downward from the guidelines range; 6,068 (8.2%) cases in which the government "sponsored" a below guidelines sentence that the Sentencing Commission did not classify as either a departure

substantively unreasonable, half of the sentences imposed in federal courts would be substantively unreasonable.[3]

In spite of the breadth of discretion they are given, district courts can and sometimes do abuse their discretion by imposing a sentence that is substantively unreasonable. Rita v. United States, 551 U.S. 338, 354, 127 S. Ct. 2456, 2466–67 (2007) ("In sentencing, as in other areas, district judges at times make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur."); see also Irey, 612 F.3d at 1165 ("We believe that the Supreme Court meant what it said in the Rita opinion and elsewhere about our duty to correct sentencing mistakes. At the same time, we recognize that our substantive review of sentences is deferential and that we only look to see if the district court abused its discretion by committing a clear error in judgment.").

A district court abuses its considerable discretion and imposes a substantively unreasonable sentence only when it "(1) fails to afford consideration to relevant factors that were due significant weight, (2) gives significant weight to

---

or a variance; and 412 (0.6%) cases in which there was a sentence below the guidelines range but the Sentencing Commission could not determine whether it resulted from a variance or a departure. Id.

The total of all of these sentences that are above the guidelines range (1,645, or 2.2%) and below the guidelines range (38,364, or 51.8%) is 40,009 (54.0%). See id.

[3] See U.S. Sentencing Comm'n, n.2, supra.

an improper or irrelevant factor, or (3) commits a clear error of judgment in considering the proper factors." Irey, 612 F.3d at 1189 (quotation marks omitted). Because that rarely happens, "it is only the rare sentence that will be substantively unreasonable." United States v. McQueen, 727 F.3d 1144, 1156 (11th Cir. 2013). The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts. United States v. Langston, 590 F.3d 1226, 1236 (11th Cir. 2009).

## III.

The sentence the district court imposed in this case is not substantively unreasonable. The court followed the spirit and the letter of the Supreme Court's and our precedent and obeyed the applicable statutory provisions when it considered all of the § 3553(a) factors at sentencing. In addition to weighing the corrected advisory guidelines range, the court also gave weight to several of the other relevant § 3553(a) factors, including: (1) the history and characteristics of the defendant, (2) the need to promote respect for the law, (3) the need to provide adequate deterrence, (4) the nature and circumstances of the crime, and (5) the need to protect the public. After considering all of the other relevant § 3553(a) factors, the district court was convinced that they outweighed the corrected advisory guidelines range, which did not adequately capture Rosales-Bruno's

14

history and characteristics.  It was for that reason the district court varied upward from the guidelines range.

The variance of 60 months above the advisory guidelines range was a major one.  But the Supreme Court has forbidden us from presuming that a sentence outside the guidelines range is unreasonable.  Gall, 552 U.S. at 51, 128 S. Ct. at 597.  So, too, has it forbidden us from requiring "extraordinary circumstances to justify" such a sentence.  Id. at 47, 128 S. Ct. at 595 (quotation marks omitted).

The district court supported the 60-month variance with significant justifications, including the facts of Rosales-Bruno's earlier violent crimes.  The sentence the district court imposed was 33 months below the statutory maximum of 120 months, which is a consideration favoring its reasonableness.  See 8 U.S.C. § 1326(b)(1); United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2009) (holding that a 50-month sentence for violating 8 U.S.C. § 1326(b)(1) was substantively reasonable in part because the sentence was well below the statutory maximum of 120 months imprisonment).

The district court's decision to vary upward from the corrected advisory guidelines range was within its substantial discretion.  Regardless of whether we would have done the same thing if we had been the sentencer, the sentence was within the outer bounds of the district court's substantial sentencing discretion —

15

"in the ballpark of permissible outcomes." Irey, 612 F.3d at 1189 (quotation marks omitted).

## IV.

Neither Rosales-Bruno nor the dissent has pointed to any precedent establishing that an 87-month sentence imposed for a crime like this one on a defendant with a criminal history materially identical to Rosales-Bruno's is substantively unreasonable. The cases in which we have held sentences to be substantively unreasonable are materially different from this one. See infra at 42 (citing the three decisions in which we have vacated upward variance sentences as unreasonable); App'x B (showing the twelve decisions in which we have vacated downward variance sentences as unreasonable).

Rosales-Bruno's position that his sentence is substantively unreasonable is based on three contentions. First, he contends that the district court gave "significant weight to an improper factor" by resentencing him as though he had a prior crime of violence conviction qualifying him for a § 2L1.2(b)(1)(A)(ii) enhancement despite our holding in Rosales-Bruno I that the enhancement did not apply. Second, he contends that the district court gave unreasonable weight to his criminal history, which he asserts is not extensive enough to support a variance 60 months above the guidelines range. Third, he contends that the upward variance is unreasonable because his case does not fall outside the heartland of illegal reentry

16

cases.  See Irey, 612 F.3d at 1182 (explaining that a case falls "outside the heartland" when "there [is] something unusual, either about the defendant or the circumstances surrounding the crime," that warrants a sentence outside of the guidelines range).  None of those contentions is valid; none of them supports Rosales-Bruno's position.

A.

Rosales-Bruno's first contention is that the district court gave significant weight to an improper factor by resentencing him as though he still had a prior crime of violence conviction for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii).  This contention implicitly assumes that the district court had to impose a lower sentence at resentencing because the guidelines range, which is one of the § 3553(a) factors, had been lowered.  The dissent makes that contention explicit, arguing that when the only change between initial sentencing and resentencing is a decrease in the advisory guidelines range, the district court must decrease the defendant's sentence.[4]  The dissent thinks that is so because, in its view, anything else would demonstrate that the district court gave "no weight at all" to the advisory

---

[4] The dissent says it has "little doubt that if the Guidelines had been correctly calculated the first time around, Rosales-Bruno would have been sentenced to 27 months."  Dissenting Op. at 57–58.  There is nothing at all in the record to support that speculation — and it is a groundless guess that is contradicted by the district court's careful explanation of why it varied upward on remand.  The best evidence of what the court would have done the first time around with an advisory guidelines range of 21 to 27 months and the § 3553(a) factors that exist in this case is, after all, what it did with that very range and those very § 3553(a) factors on remand.

17

guidelines. Dissenting Op. at 58. In the dissent's view, the evidence that the district court ignored the advisory guidelines range is so strong that by affirming the district court we are saying that "no evidence ever would be" enough to reverse a district court for failing to give enough weight to the advisory guidelines. Id. at 60. No it isn't, and no we aren't.

### 1.

At resentencing, the district court was required to correct the error involving the § 2L1.2(b)(1)(A)(ii) enhancement, to calculate the guidelines range free of that error, and to consider that corrected range. It did so. The court was required to consider and weigh the other § 3553(a) sentencing factors as well. It did so. And the court was required to determine whether, in its judgment, those other sentencing factors outweighed the lower advisory guidelines range. It did so. In the judgment of the experienced district court judge, the other § 3553(a) factors, especially Rosales-Bruno's criminal history and record of violence against his girlfriend, outweighed the advisory guidelines range of 21 to 27 months and the proper sentence was 87 months.

The dissent's position is that an advisory guidelines range becomes less advisory and more mandatory if it was not correctly calculated at the initial sentence hearing. See Dissenting Op. at 58–60. But why? Why should the fact that it took an appeal and remand to get the advisory guidelines range correct make

18

the corrected advisory guidelines range any less advisory than it would have been if the district court had correctly calculated it to begin with? We remand in cases like this one to correct errors in the steps leading to the district court's sentencing decision, not to punish the court or the government, or reward the defendant, because an error was committed the first time. The dissent would hold that if the district court imposed a sentence that was within a higher guidelines range at the initial sentencing, it must impose a sentence within the corrected lower guidelines range on remand. See Dissenting Op. at 58 ("Nothing in the record at Rosales-Bruno's initial sentencing hearing suggests that the court viewed Rosales-Bruno as the type of defendant who warranted an upward variance at all . . . ."). In other words, the advisory guidelines become mandatory on remand.

That is not the law. See United States v. Booker, 543 U.S. 220, 246, 125 S. Ct. 738, 757 (2005); Irey, 612 F.3d at 1183; see also Spencer v. United States, 773 F.3d 1132, 1141–42 (11th Cir. 2014) (noting the "advisory nature of every provision of the guidelines" and stating that "a district judge cannot treat th[e] guideline[s] as mandatory"). As the Booker decision establishes, the guidelines and their application provide advice about sentencing; they do not control it. See Booker, 543 U.S. at 246, 125 S. Ct. at 757; Irey, 612 F.3d at 1183. That is why a change in the guidelines range may lead to a change in the sentence but does not require one.

19

The district court must consider the advisory guidelines range in making the sentencing decision, but it is only one of a dozen or so factors that the court must take into account.  See Booker, 543 U.S. at 245, 125 S. Ct. at 757; see also 18 U.S.C. § 3553(a).  The Supreme Court has been clear that "[t]he Guidelines are not the only consideration . . . .  Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party."  Gall, 552 U.S. at 49–50, 128 S. Ct. at 596.

That is exactly what the district court did in resentencing Rosales-Bruno.  It correctly recalculated the advisory guidelines range, it gave both parties the opportunity to argue for the sentence they thought appropriate, and it then considered the remaining § 3553(a) sentencing factors in deciding what the sentence should be.  The court exercised its authority to assign heavier weight to several other sentencing factors than it assigned to the guidelines range.  Nothing requires a sentencing court to give the advisory guidelines range as much weight as it gives any other § 3553(a) factor or combination of factors.  See Shaw, 560 F.3d at 1237 (noting that a sentencing court "is permitted to attach great weight" to certain factors) (quotation marks omitted); see also Gall, 552 U.S. at 57, 128 S. Ct. at 600; Williams, 526 F.3d at 1322.

20

A sentence's variance outside the guidelines range, whether upward or downward, represents a district court's judgment that the combined force of the other § 3553(a) factors are entitled to greater weight than the guidelines range. Otherwise, there would never be any variances. Yet every year thousands of sentences outside the guidelines are imposed and upheld. See, e.g., U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2014, Eleventh Circuit 11 tbl.8 (2015) (showing that in fiscal year 2014 district courts imposed more than 20,000 sentences outside the guidelines range for reasons other than a departure). This is one of them.

The dissent points out that "[n]othing in the record at Rosales-Bruno's initial sentencing hearing suggests that the court viewed Rosales-Bruno as the type of defendant who warranted an upward variance at all, let alone such a significant one." Dissenting Op. at 58. No, but the record and result of the initial sentencing show that the district court thought that the appropriate sentence in view of all of the facts and circumstances was 87 months. At the initial sentencing, no variance was necessary to reach that appropriate sentence. At the resentencing, after reconsidering everything in light of the new guidelines range, the court concluded that an 87-month sentence was still the appropriate sentence in light of all the facts and circumstances, which is why it varied upward to that same sentence. The goal of sentencing is not to change the sentence in lockstep with changes in the advisory

21

guidelines range but to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in [§ 3553(a)(2)]." 18 U.S.C. § 3553(a). The district court did that.

2.

The contention that ruling out the § 2L1.2(b)(1)(A)(ii) enhancement required a sentence within the guidelines is wrong for another reason. When it comes to sentencing, particularized facts about the defendant matter. See Gall, 552 U.S. at 54, 128 S. Ct. at 599 (noting that "the unique facts" of the defendant's situation provided support for the district court's determination that a below guidelines sentence was appropriate) (emphasis added); Kimbrough, 552 U.S. at 111, 128 S. Ct. at 576 (holding that the district court did not abuse its discretion by imposing a below guidelines sentence where it "properly homed in on the particular circumstances of [the defendant's] case") (emphasis added); United States v. Pugh, 515 F.3d 1179, 1191 (11th Cir. 2008) (noting that we must vacate a sentence and remand for resentencing "if we are left with the definite and firm conviction that the district court . . . arriv[ed] at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case") (emphasis added) (quotation marks omitted); see also Irey, 612 F.3d at 1189–90 ("In reviewing the reasonableness of a sentence, we must, as the Supreme Court has instructed us, consider the totality of the facts and circumstances.") (emphasis added).

22

In assigning weight to the § 3553(a) factors as part of the weighing process, a court may (and should) consider individualized, particularized, specific facts and not merely the guidelines label that can be put on the facts. The district court did focus on the individualized, particularized, specific facts in resentencing Rosales-Bruno. His argument against the sentence he received does not focus on them.

None of the facts about Rosales-Bruno's illegal reentry conviction or his extensive criminal history changed between the first and second sentencing. The only change was that his earlier conviction for false imprisonment could not be categorized as a "crime of violence" conviction for the limited purposes of the U.S.S.G. § 2L1.2(b)(1)(A)(ii) enhancement, see Rosales-Bruno I, 676 F.3d at 1022–24, no matter how violent it actually was, and that change resulted in a lower adjusted offense level and a lower advisory guidelines range.[5] The district court considered the correct range. But the court also considered the unchanged facts underlying his prior convictions for assault, false imprisonment, two separate battery offenses, and a dozen driving offenses including some DUIs. As Rosales-

---

[5] In Rosales-Bruno I, we applied the "modified categorical approach" to determine that Rosales-Bruno's false imprisonment conviction under Florida Statute § 787.02 was not a "crime of violence" for guidelines purposes. See 676 F.3d at 1020. Our decision in Rosales-Bruno I predated the Supreme Court's opinion in Descamps v. United States, — U.S. —, 133 S. Ct. 2276 (2013), which made clear that the modified categorical approach does not apply to statutes like the Florida false imprisonment statute that contain a "single, indivisible set of elements sweeping more broadly than the corresponding generic offense." 133 S. Ct. at 2283 (quotation marks omitted). That, of course, does not change the inapplicability of the § 2L1.2(b)(1)(A) enhancement, nor does it change the facts underlying Rosales-Bruno's prior convictions or the district court's duty to consider them under § 3553(a).

23

Bruno conceded at the first sentence hearing, the district court could review the facts underlying his earlier convictions in deciding on the proper sentence for his conviction in this case. Which is what the court did.

We vacated Rosales-Bruno's original sentence because the government had failed to carry its burden of showing from the state court sentencing documents, instead of from Rosales-Bruno's actual criminal conduct itself, that his false imprisonment conviction under Florida law categorically fit within the definition of "crime of violence" required for application of the § 2L1.2(b)(1)(A)(ii) guidelines enhancement.[6] See Rosales-Bruno I, 676 F.3d at 1024 (citing Shepard v. United States, 544 U.S. 13, 125 S. Ct. 1254 (2005)). This Court never said — and given the plain meaning and common understanding of the word "violence" we would never say — that what Rosales-Bruno actually did to Edith Rodriguez on two separate occasions was not violence and more violence.

Rosales-Bruno attacked Edith Rodriguez and shoved her into a stove. When she tried to escape, he grabbed her by the face and pinned her down between two beds and took out his cigarette lighter and threatened to burn her with it. Then while out on bond because of the charges stemming from that violent attack, Rosales-Bruno attacked Rodriguez again. After pulling their 18-month-old daughter out of her arms he punched Rodriguez at least five times and forced her

_____

[6] See supra note 5.

24

into his car.  She struggled and managed to escape, but Rosales-Bruno chased her down and threatened to kill her and grabbed her hair and pulled some of it out and started choking her with his arm around her neck.  Rodriguez was saved because some employees at a nearby business heard her screams, causing Rosales-Bruno to flee, taking the little child with him.  His brutal assaults on Rodriguez were violent crimes as that term is understood in the civilized world, and they may properly be considered as violent crimes for sentencing purposes other than for the application of an advisory guidelines enhancement under § 2L1.2(b)(1)(A).

The district court was entitled to look beyond guidelines labels at the actual facts of Rosales-Bruno's earlier crimes and to find that some of his criminal conduct was violent and deserved substantial weight.  See Shaw, 560 F.3d at 1237, 1240–41.  Given the broad sentencing discretion that district courts have, we are not "left with the definite and firm conviction that the district court committed a clear error of judgment," Irey, 612 F.3d at 1190 (quotation marks omitted), when it did exactly that.  Cf. United States v. Herrera-Garduno, 519 F.3d 526, 530 (5th Cir. 2008) (rejecting defendant's argument that the district court's possible disagreement with how "drug trafficking offenses" were defined under U.S.S.G. § 2L1.2 was an insufficient reason to impose a non-guidelines sentence).  The sentencing statute at least authorizes, and arguably requires, a court to do what the district court did in considering the hard, ugly facts of Rosales-Bruno's prior

25

convictions. <u>See</u> 18 U.S.C. § 3553(a)(1)–(2) ("The court, in determining the particular sentence to be imposed, shall consider — (1) . . . the history and circumstances of the defendant;  [and] (2) the need for the sentence imposed — . . . (C) to protect the public from further crimes of the defendant . . . .").

### B.

We also reject Rosales-Bruno's second contention, which is that in resentencing him the district court gave unreasonable weight to his criminal history as a whole.  District courts have broad leeway in deciding how much weight to give to prior crimes the defendant has committed.  <u>See, e.g.</u>, <u>United States v. Overstreet</u>, 713 F.3d 627, 638 (11th Cir. 2013); <u>United States v. Williams</u>, 526 F.3d 1312, 1323–24 (11th Cir. 2008) (holding that "it is within the district court's discretion to decide how much weight to give each § 3553(a) factor" and that previous offenses "fit[] squarely into one of the § 3553(a) factors, the history and characteristics of the offender"); <u>see also</u> 18 U.S.C. § 3661 ("No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider for the purpose of imposing an appropriate sentence."); <u>United States v. Early</u>, 686 F.3d 1219, 1223 (11th Cir. 2012) ("The district court gave great weight to [the defendant's] three bank robberies within a week, and to his substantial criminal history.  This is not a clear error in judgment.").

26

And Rosales-Bruno's criminal history is extensive. We have already described his two violent attacks on the same woman, the second of which occurred while he was out on bond pending trial for charges stemming from the first attack. See supra pp. 3, 25. He violated the terms of his probation in multiple ways. In addition, Rosales-Bruno has numerous driving-related convictions. In November 2000 he was convicted of driving without a license. In December 2001 he was convicted of driving under the influence with a blood alcohol level twice the legal limit. In February 2002 he was convicted of driving with a suspended license. He was again convicted of driving under the influence and driving with a suspended license in July 2003. Another incident led to additional convictions in July 2003 for giving a false name while arrested or detained and driving with a suspended license. In June 2004 he was convicted on three separate counts for driving under the influence, driving with a suspended license, and refusing to sign citations for those offenses. Finally, in April 2007 he was convicted of driving without a valid driver's license after the police stopped him for speeding and observed several open beer containers in his car.[7] And, of course, the present case arose because he was convicted in 2011 of the felony of illegally reentering the United States after he had been deported following his conviction for a felony.

---

[7] The dissent suggests that Rosales-Bruno shows "a decreasing pattern of criminality." Dissenting Op. at 73. The rosy picture the dissent paints of Rosales-Bruno's criminal trajectory fails to take into account that in 2007 Rosales-Bruno's criminal conduct escalated from driving drunk to beating up a woman.

27

Rosales-Bruno is not someone who has devoted much time or effort to complying with the law.

The district court explained in resentencing Rosales-Bruno that it believed an 87-month sentence was "appropriate" based on his lengthy criminal history, which the court took into account in weighing several of the § 3553(a) sentencing factors such as the history and characteristics of the defendant, the need to promote respect for the law, and the need to provide adequate deterrence. See 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(B). The court also agreed with the government that the § 3553(a)(2)(C) factor about the need for protection of the public supported an 87-month sentence. As did the § 3553(a)(1) "nature and circumstances of the [illegal reentry] offense" factor, which the court considered.

The dissent argues that the district court's consideration of § 3553(a)(2)(A), which requires a sentence to "reflect the seriousness of the offense . . . and to provide just punishment for the offense," was "clearly unreasonable" because illegal reentry is, in the dissent's view, a "relatively low-level offense." Dissenting Op. at 71. The dissent is entitled to its opinion, but it is not entitled to substitute its views about the punishment the crime deserves for the views of the district court. As we have pointed out, we are not reviewing the district court's judgment de novo, but only to determine whether the court abused its considerable discretion. See Irey, 512 F.3d at 1184.

28

In any event, the dissent underestimates the seriousness of Rosales-Bruno's conviction. Because Rosales-Bruno committed a felony, and was later deported, and then reentered the United States illegally, he moved out of what the dissent calls the "relatively low-level" category of 8 U.S.C. § 1326(a) and into the much more serious category of § 1326(b)(1). See Dissenting Op. at 71. That escalation resulted in the statutory maximum for his crime of reentry after deportation increasing from two years to ten years. The latest crime for which Rosales-Bruno was convicted, the one for which he was sentenced in this case, is not a "relatively low-level offense."

The court's decision to give more weight to the other § 3553(a) factors combined than to the advisory guidelines range alone was not unreasonable. See United States v. Mateos, 623 F.3d 1350, 1368 (11th Cir. 2010) ("[I]t is within [the district] court's discretion to decide how much weight to give each of the § 3553 factors as long as it has not committed a clear error of judgment."); Shaw, 560 F.3d at 1237 ("The district court . . . is permitted to attach great weight to one factor over others.") (quotation marks omitted); Williams, 526 F.3d at 1323 (noting that it is "within the district court's discretion to decide how much weight to give each § 3553(a) factor"). Placing substantial weight on a defendant's criminal record is entirely consistent with § 3553(a) because five of the factors it requires a court to

29

consider are related to criminal history.  See 18 U.S.C. § 3553(a)(1), (a)(2)(A)–(C), (a)(6).

Our precedent supports the conclusion that the district court did not abuse its discretion in assigning weight to, and weighing, the § 3553(a) sentencing factors. Under substantive reasonableness review, we have repeatedly affirmed sentences that included major upward variances from the guidelines for defendants with significant criminal histories that the sentencing courts weighed heavily.  See, e.g., Overstreet, 713 F.3d at 634, 636–40 (affirming 420-month sentence where guidelines recommendation was only 180–210 months); Early, 686 F.3d at 1221–22 (affirming 210-month sentence where guidelines range was only 78–97 months); Shaw, 560 F.3d at 1238–41 (affirming statutory maximum 120-month sentence where guidelines range was only 30–37 months); see also United States v. Turner, 474 F.3d 1265, 1274, 1280–81 (11th Cir. 2007) (affirming 240-month sentence despite guidelines range of only 51–63 months and defendant's lack of criminal history).

Other circuits have affirmed above guidelines sentences for illegal reentry defendants with criminal histories.  See, e.g., United States v. Rivera-Santana, 668 F.3d 95, 98–100, 99 n.5, 106 (4th Cir. 2012) (holding that 240-month sentence for illegal reentry following removal for an aggravated felony conviction was substantively reasonable even though the guidelines range was only 120–150

months, the variance being justified by the defendant's extensive criminal history); United States v. Yanez-Rodriguez, 555 F.3d 931, 946–49 (10th Cir. 2009) (affirming 144-month sentence for illegal reentry following removal for an aggravated felony conviction substantively reasonable even though the guidelines range was only 41–51 months imprisonment, the upward variance being justified in part by the defendant's prior conviction for aggravated sexual battery), overruled in part on unrelated grounds by Puckett v. United States, 556 U.S. 129, 133–34, 129 S. Ct. 1423, 1428 (2009).

## C.

Rosales-Bruno's final contention is that his sentence was substantively unreasonable because his case fell "squarely within the heartland of illegal reentry cases" and therefore didn't merit an upward variance. Relying on impressions that his attorney has formed from anecdotal "evidence" alone, Rosales-Bruno posits that many illegal reentry defendants have substantial criminal histories and argues that because his criminal history is only "average" it cannot serve as the basis for an upward variance. Putting aside the legal premise of this contention, its factual premise is false. According to the Sentencing Commission, 86.9% of illegal reentry offenders in 2013 fell within one of the first four criminal history

31

categories under the sentencing guidelines.[8]  Rosales-Bruno does not.  He has a criminal history category of V.  His category V status sets him apart from most illegal reentry offenders, and not to the good.  Only 13.1% of illegal reentry offenders fall into a criminal history category that is comparable to or worse than his.[9]

The dissent believes Rosales-Bruno's offense is a "mine-run case" of illegal reentry not deserving of an upward variance.  Dissenting Op. at 64–67.  In support of that belief, the dissent says that it "suspect[s] that the criminal history of most convicted-felon, category V criminals is as bad or worse" than Rosales-Bruno's history.  Dissenting Op. at 67.  But it backs up its suspicion only with its similarly unsupported belief that whatever is true of Rosales-Bruno's criminal history must also be "equally true of other convicted-felon, category V illegal reentrants."[10]  Id. at 14.  "Truly, this is 'turtles all the way down.'"  Rapanos v. United States, 547 U.S. 715, 754 & n.14, 126 S.Ct. 2208, 2233 & n.14 (2006) (plurality op.).

_____

[8] See U.S. Sentencing Comm'n, Quick Facts: Illegal Reentry Offenses (2014), available at http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Illegal_ReentryFY13.pdf.

[9] See U.S. Sentencing Comm'n, supra n.8.

[10] The dissent repeats and relies on the same speculation when it contends that the district court did not provide a justification that was "sufficiently compelling to support the degree of the variance."  Dissenting Op. at 69; see also Gall, 552 U.S. at 50, 128 S. Ct. at 597.  It suggests that "the justifications supporting the variance imposed here amount to no more than a recitation of characteristics that are common to most convicted-felon, category V illegal reentrants."  Dissenting Op. at 69 (quotation marks omitted).  But there is no alchemy in repetition that transmutes a guess into a longed for fact.

32

Conjecture is not proof, and tautology is not reasoning. If Rosales-Bruno believes the district court made a clear error of judgment when it sentenced him more harshly than it would have done in a "mine-run case," it is his burden to prove as much. Langston, 590 F.3d at 1236. Neither he nor the dissent offers any proof. Their unsupported assertions and suspicions do not support a "definite and firm conviction" that the district court erred when it decided that Rosales-Bruno's criminal history and the other § 3553(a) factors made an 87-month sentence appropriate. See Irey, 612 F.3d at 1190.

The dissent also contends that because the criminal history category assigned to Rosales-Bruno already reflects the fact that he was convicted of earlier crimes, the district court had no reason to vary outside the guidelines range. This is yet another attempt to smuggle into the discussion the dissent's position that the court should have treated the guidelines range as mandatory. A correctly calculated advisory guidelines range always reflects a defendant's criminal history, and yet as we've discussed, supra p. 12, district courts impose sentences outside of the guideline ranges more than half the time, because other, non-guidelines factors outweigh those advisory ranges. Here, the non-guidelines factors that most influenced the district court are those that focus on the violent facts of Rosales-Bruno's earlier crimes.

33

Indeed, that our Rosales-Bruno I decision stripped the technical § 2L1.2(b)(1)(A)(ii) "crime of violence" description label from acts that were unquestionably violent crimes suggests that the guidelines range — which the dissent insists should trump everything else — no longer accurately reflects the complete "history and characteristics of the defendant." See 18 U.S.C. § 3553(a)(1). The district court had to take into account the actual facts underlying Rosales-Bruno's convictions in order to fully account for his "history and characteristics" in the sentence it imposed. See id.; cf. Early, 686 F.3d at 1222 (noting that the district court found that the advisory "guidelines did not adequately account for [the defendant's] criminal history" because the criminal history score "did not reflect the sustained nature of [the defendant's] criminal conduct"). Doing so was not error.

The dissent would require the district court, before it could vary from the guidelines range, to distinguish Rosales-Bruno's criminal history from that of "the average category V illegal reentrant with a felony conviction." See Dissenting Op. at 66. To meet those onerous requirements, district courts would have to have a detailed profile of the average offender for each crime, including the average number and nature of his prior crimes, and then it would have to show all of its work in distinguishing the criminal before it from the average one who commits that crime.

34

Despite what the dissent argues, Dissenting Op. at 66, district courts are not required to figure out who is the "average" offender for each crime, at each offense level and within each criminal history category, and then explicitly compare the details of the case before it with the details of the average offender's average case. That degree of explicit comparison far exceeds the level of explanation we require of district courts exercising their sentencing discretion.[11] See Irey, 612 F.3d at 1195 ("No member of this Court has ever before indicated that a sentencing judge is required to articulate his findings and reasoning with great detail or in any detail for that matter."); United States v. Sanchez, 586 F.3d 918, 936 (11th Cir. 2009) ("In general, the district court is not required to state on the record that it has explicitly considered each of the § 3553(a) factors or to discuss each of the § 3553(a) factors.") (quotation marks omitted); see also Rita, 551 U.S. at 358, 127 S. Ct. at 2469 (noting that the "sentencing judge's statement of reasons was brief but legally sufficient" after the judge "listened to each argument" and "considered

---

[11] The dissent claims its new test would not "require an unprecedented degree of explicit comparison between offenders," because "[a]ll [it] would require is that the sentencing judge give a credible justification for a major variance from the Guidelines beyond factors that are typical of defendants subject to the same advisory range." Dissenting Op. at 70. But of course that is what the district court did here: faced with an advisory guidelines range that no longer reflected the violence of Rosales-Bruno's earlier crimes, the district court described that violence in some detail, showing how in the court's view Rosales-Bruno was not "typical of defendants subject to the same advisory range," Dissenting Op. at 70, and then the court varied upward to account for it.

the supporting evidence" but found the "circumstances insufficient to warrant a [lower] sentence").

The dissent's proposed new averaging requirement is neither feasible nor reasonable. It places an impossible burden on district courts to have detailed and granular knowledge of the criminal résumé of the "average" offender for each offense of conviction at each offense level and in each criminal history category. The sentencing guidelines list nearly 60 categories of offenses, 43 offense levels, and six criminal history categories. See U.S.S.G. Tbl. of Contents; id. Ch. 5 Pt. A, Sentencing Tbl. Under the dissent's approach, there would be more than 15,000 $(60 \times 43 \times 6 = 15,480)$ different kinds of "average" criminals. And the dissent wants district courts to go further still. It would require them to distinguish among individual crimes of conviction and among individual aggravating circumstances, such as the presence or absence of prior felony convictions. See Dissenting Op. at 65–66.

The dissent insists that it doesn't want a "statistical analysis" and that all it is asking is for "district courts [to] use their common sense and experience" and their "good judgment." Dissenting Op. at 66 n.4. But that is exactly what the district court did in this case. Drawing on his two decades of experience sentencing criminals, exercising common sense and good judgment, the district court determined that an 87-month sentence was warranted for this criminal in this case.

36

Its reward for doing exactly what the dissent said it should do is to be second-guessed by the dissent.

The dissent argues that "[n]othing in the record suggests that Rosales-Bruno is any worse than other convicted-felon, category V illegal reentrants, let alone so much worse that the high end of his advisory sentencing range should be tripled." Dissenting Op. at 63.  But the district court — more familiar with that record, more familiar with the defendant, and far more familiar than we are with "other convicted-felon, category V illegal reentrants" — exercised common sense, experience, and good judgment when it ruled that an 87-month sentence was appropriate under the facts and circumstances of this case.

The extensive nature of Rosales-Bruno's criminal history and the specific details of his violent criminal conduct made him an outstanding candidate for an upward variance from the advisory guidelines range after a conviction for illegal reentry.  His history of criminal conduct is worse than that of the typical illegal reentry conviction defendant.  He falls outside, not inside, the heartland of illegal reentry defendants.  See Irey, 612 F.3d at 1182 (explaining that a case is outside the heartland "if there was something unusual, either about the defendant or the circumstances surrounding the crime, that warranted a different sentence").  This is all the more reason why the upward variance sentence is not an abuse of the district court's substantial sentencing discretion.  See Kimbrough, 552 U.S. at 109, 128

37

S. Ct. at 574–75 ("[A] district court's decision to vary from the advisory Guidelines may attract greatest respect when the sentencing judge finds a particular case outside the heartland to which the Commission intends individual Guidelines to apply.") (quotation marks omitted).  When we remanded the case to the district court for resentencing we did not imply, much less hold, that the district court was forbidden from determining that the appropriate sentence was the same one it had imposed before.  See Rosales-Bruno I, 676 F.3d at 1024 ("We express no opinion, however, as to what sentence would now be appropriate for Rosales-Bruno.").

## V.

Part II of the dissenting opinion criticizes this Court as a whole for the message the dissenting judge believes we have sent to district courts about how we review sentences for reasonableness.  The dissent's criticism is not about the legal standards that we have announced or the holdings of our decisions.  We made clear in our en banc decision in Irey that the principles we announced in that decision applied equally to sentences above and below the guidelines range.  See Irey, 612 F.3d at 1196 ("What § 3553(a) requires is a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of that subsection.") (quotation marks omitted); id. at 1197 (stating that the proper analysis is under "the Goldilocks principle," which means that "the goal is to lock

38

in a sentence that is not too short and not too long, but just right to serve the purposes of § 3553(a)") (quotation marks omitted).

The dissent acknowledges that our decisions, particularly Irey, have correctly stated the law. See Dissenting Op. at 82–83 (positing that some think "we have given the impression that we are more likely to vacate a lenient sentence than a harsh one," but stating emphatically that "[t]hat is not the law of this circuit"); id. at 83 (conceding that our en banc decision in "Irey articulated meaningful lower and upper limits on a court's sentencing discretion,"); id. at 84 (acknowledging that "Irey articulates the only standard we use to review sentences for substantive reasonableness, and that standard applies regardless of whether a sentence imposed by the district court is challenged as too lenient or too harsh"). So, we have gotten the law right.

The dissent's criticism of this Court is that even though we have gotten the law right, it believes that the results of our substantive reasonableness decisions have sent a message to district courts that we will not vacate unreasonably long sentences, only unreasonably short ones. See Dissenting Op. at 75, 83. We are not told whether the accusation is that the Court has done this deliberately or just negligently. In any event, if we have been sending a message that contrary to the neutral principles we have announced we will favor upward variances more than downward ones, either we are not good at sending messages or the district courts

39

of this circuit are not good at receiving them.  The irrefutable fact is that district courts in our circuit impose far more downward variance sentences than upward variance ones.  And the disparity in the rate at which downward and upward variance sentences are being imposed is increasingly favoring downward variances.[12]

The table that is Appendix A to this opinion, which is drawn from Sentencing Commission reports and a survey of decisions of this Court, tells the story.  It shows that in fiscal years 2006 through 2014, the nine fiscal years since the Booker decision for which data is available, the district courts in this circuit have sentenced 61,866 defendants.[13]  They imposed 828 upward variance

---

[12] We look to these sentencing facts because they, and not any graphic one-time occurrences, are the most reliable method of determining whether the message the dissent fears has been sent and received.  "Cognitive psychology tells us that the unaided human mind is vulnerable to many fallacies and illusions because of its reliance on its memory for vivid anecdotes rather than systematic statistics."  Steven Pinker, quoted in "Steven Pinker: Fighting Talk from the Prophet of Peace," The Observer, Oct. 15, 2011, available at http://www.theguardian.com/science/2011/oct/15/steven-pinker-better-angels-violence-interview (last visited June 9, 2015).

[13] This figure comes from data collected by the United States Sentencing Commission. U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2014, Eleventh Circuit 11 tbl.8 (2015); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2013, Eleventh Circuit 11 tbl.8 (2014); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2012, Eleventh Circuit 11 tbl.8 (2013); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2011, Eleventh Circuit 11 tbl.8 (2012); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2010, Eleventh Circuit 11 tbl.8 (2011); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2009, Eleventh Circuit 11 tbl.8 (2010); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2008, Eleventh Circuit 11 tbl.8 (2009); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2007, Eleventh Circuit 11 tbl.8 (2008); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2006, Eleventh Circuit 11 tbl.8 (2007).

sentences, which amounts to only 1.34% of all sentences.[14]  By contrast, they

imposed 9,307 downward variance sentences, which amounts to approximately

15.04% of all sentences.[15]  That means in the post-Booker era, the only period in

which variances have been possible, there have been more than eleven times as

many downward variance sentences as upward variance sentences.

Not only that, but during those nine years the number of downward variance

sentences has gone up every year but one,[16] increasing overall from 437 in 2006 to

1,516 in 2014 — a 247% increase in downward variance sentences.  The rate at

which district courts in our circuit have granted downward variances has more than

tripled as well, from 6.59% in 2006 to 22.52% in 2014.  Upward variances, by

contrast, peaked in 2011 at 116 (1.67%) and decreased each of the next three years,

falling to 92 (1.37%) by 2014.  And in contrast with the 247% increase in

---

[14] These figures also come from Table 8 in the Sentencing Commission reports cited supra in footnote 13.  They exclude instances where a district court imposed a departure, as opposed to a variance, above or below the guidelines range.  They also exclude instances in which the district court appears to have imposed both a departure and a variance above or below the guidelines range.  However, the data in Table 8 of those Sentencing Commission reports also shows that courts in our circuit grant downward departures far more often (about five times more often if we exclude government-sponsored downward departures, and about 45 times more often if we include them) than they grant upward departures. Which means that if we included departures in our numbers the results would show an even greater disparity between outside-the-guidelines sentences favorable to defendants as opposed to the government.

[15] See supra n.13.  Like the figures cited in footnote 14, supra, these exclude departures.  They also exclude a category the Sentencing Commission calls "government-sponsored" below guidelines sentences that includes both variances and departures.

[16] The number of downward variances decreased one year (from 1,272 in 2010 to 1,215 in 2011).  See supra n.13.  Every other one of the nine years from 2006 to 2014, they increased.

41

downward variance sentences, upward variance sentences have gone up only 39.4% in the post-Booker years.  A chart showing the contrasting trends is contained in Appendix C to this opinion.

If, as the dissent insists, the results of our reviews for reasonableness have been sending district courts a message that an upward variance sentence is less likely to get vacated than a downward variance one, it does not appear that the district courts have gotten that message.  Or if they have, they simply don't care.  They have indisputably been imposing more downward variance sentences and have done so at an increasing rate.

The real reason that district court judges have not responded to the message that the dissent sees hidden in the results of our sentencing review is that there is no such message.  The data in the chart that is Appendix A shows that.  The district courts in our circuit have imposed 828 upward variance sentences in the nine years for which we have data since the year the Booker decision was released in 2005.  Contrary to the dissent's claim that "[w]e have not . . . expressly set aside a sentence because it was too harsh," Dissenting Op. at 85, we have in fact vacated three of those upward variance sentences as unreasonably long.  See United States v. Valdes, 500 F.3d 1291, 1292 (11th Cir. 2007) (vacating a 108-month upward variance sentence for bank fraud where the guidelines range was 41 to 51 months); United States v. Lopez, 343 F. App'x 484, 485–86 (11th Cir. 2009) (unpublished)

42

(vacating a 60-month upward variance sentence for smuggling unlawful aliens into the country where the guidelines range was 33 to 41 months); United States v. Gardner, 255 F. App'x 475, 476–77 (11th Cir. 2007) (unpublished) (vacating as unreasonable a sentence for misprision of a felony that was 36 months, where the guidelines range was 10 to 16 months, regardless of whether it resulted from an upward departure or upward variance).[17] This means that we have vacated as

---

[17] The dissent spends several pages on an unsuccessful attempt to distinguish or belittle our decisions vacating as unreasonably long upward variance sentences. See Dissenting Op. at 74, 77–82. It first contends that those decisions do not count because none of them "impose a sentencing ceiling on remand." Id. at 74. There are two fundamental flaws with that criticism. The first is that the dissent never explains why that matters, and it does not. A decision holding a sentence is unreasonably long is a decision that the sentence is unreasonably long regardless of whether the opinion specifies how long the sentence on remand can be without also being unreasonable.

The second flaw in the dissent's position is that ignores the fact that, with only one exception, when we have vacated sentences as unreasonably short we have not specified the sentence that should be imposed on remand either. So under the dissent's own reasoning only one of our downward variance decisions counts in favor of its position — one decision in nine years. It is also worth noting that the one case in which we specified the only reasonable sentence that could be imposed on remand is Irey. In it, the top and bottom of the guidelines range were the same as the statutory maximum, which meant that the only sentence within the guidelines range was the maximum sentence. 612 F.3d at 1224. We decided that the facts of the crimes in Irey were so horrendous that no downward variance sentence could be reasonable "under the totality of the facts and circumstances of th[e] case." Id. Our dissenting colleague agreed, joining in full that holding and all of the rest of the Irey opinion. We did in the Irey case exactly what he believed we were required to do in that case. He was right then and is wrong now.

Next, the dissent argues that Valdes and Lopez were decided on procedural, not substantive, unreasonableness grounds, citing Irey for the proposition that "the adequacy of a district court's . . . sentence explanation is a classic procedural issue." Dissenting Op. at 78–79 & n.13 (emphasis omitted). That reasoning misreads Irey. The language the dissent cites in Irey stands for the unremarkable proposition that if a district court fails to follow the required procedures — chief of which is to consider the § 3553(a) factors — the court has committed a procedural error. 612 F.3d at 1194; see also Gall, 552 U.S. at 51, 128 S. Ct. at 597 (explaining that "failing to consider the § 3553(a) factors, . . . or failing to adequately explain the chosen sentence" is "procedural error"); United States v. Scott, 426 F.3d 1324, 1329–30 (11th Cir. 2005)

("[T]he district court explicitly acknowledged that it had considered [the defendant's] arguments at sentencing and that it had considered the factors set forth in § 3553(a). This statement alone is sufficient in post-<u>Booker</u> sentences.").

The <u>Valdes</u> opinion states that the "<u>reasons discussed</u> were inadequate to support an extraordinary variance to a sentence of 108 months," not that the <u>discussion of the reasons</u> was itself inadequate. 500 F.3d at 1292 (emphasis added). The dissent misses that distinction. Similarly, in <u>Lopez</u>, we explicitly stated that the district court had complied with its procedural duties: it considered the § 3553(a) factors. 343 F. App'x at 486. When we vacated the sentence, we did so on substantive grounds, namely that the court's "justification" — its reason — for the sentence was inadequate, not its discussion of that justification. <u>See id.</u> Further, the dissent does not argue that the downward variance sentences we have vacated for similar reasons should not count. <u>See, e.g.</u>, <u>United States v. Hooper</u>, 566 F. App'x 771, 773 (11th Cir. 2014) (unpublished) (noting that "the court failed to cite a sufficiently significant justification for granting a 100%, 70-month downward variance"); <u>United States v. McQueen</u>, 727 F.3d 1144, 1159 (11th Cir. 2013) (noting that the district court offered "no reasoned justification other than that [a codefendant] was getting a lower sentence" for defendants' downward variances); <u>United States v. Pugh</u>, 515 F.3d 1179, 1201 (11th Cir. 2008) ("Quite simply, in our view, the district court did not support this major departure with a significant justification.") (quotation marks omitted).

The dissent also argues that <u>Valdes</u> and <u>Gardner</u> were decided under precedents that are no longer good law. (Those precedents required an extraordinary justification for an extraordinary variance.) Dissenting Op. at 81–82. But so what? The dissent does not claim that the decisions were inconsistent with then-binding precedent. <u>See id.</u> Why would decisions correctly applying the law at the time suggest anything other than that we will continue to correctly apply the law? Those two decisions vacating upward variance sentences as substantively unreasonable show that we will apply our binding precedent on reasonableness, which the dissent concedes correctly states the law.

We note (as does the dissent, Dissenting Op. at 78–79) that two of these three decisions are unpublished and as such do not serve as binding precedent about the law. <u>See</u> 11th Cir. R. 36-2. Judge Martin recently seemed to seize on that point in her dissent from an unpublished opinion in <u>United States v. Rivero</u>, No. 14-10121, 2015 WL 1542684, at *5 (11th Cir. Apr. 8, 2015) (unpublished) (Martin, J., dissenting) ("[D]uring the . . . period since <u>Booker</u>, I am aware of no <u>published</u> opinion in which we have held that an above-Guidelines sentence was substantively unreasonable.") (emphasis added). But the charge of the dissent in this case and of Judge Martin's dissenting opinion in <u>Rivero</u> is not that we haven't published enough opinions correctly stating the law concerning reasonableness review. It is, instead, that the results of our sentence review have somehow sent a message contrary to the neutral principles that we have announced in our opinions, including published ones.

Given that it is the result that matters under the dissent's theory, it makes no difference whether the result comes in a published or an unpublished opinion. Our unpublished opinions are, after all, as readily accessible online as our published ones. Ironically, Judge Martin's dissenting opinion in <u>Rivero</u>, like the majority opinion in that case, is itself unpublished. Still,

44

unreasonable 0.36% of the upward variance sentences that have been imposed. There have been 9,307 downward variance sentences, and we have vacated 12 of them as unreasonably short. This means that we have vacated as unreasonable only 0.13% (about one-eighth of one percent) of downward variance sentences.

So if we assume, as the dissent's position does, that district court judges are closely following our sentencing review results, what they will see is that we mean what we say about deferring to their discretion when sentencing. We vacate on substantive reasonableness grounds less than 1% of the sentences that vary upward or downward from the guidelines range. The message we send to the district courts is not, as the dissent suggests, "that they enjoy virtually unfettered sentencing discretion, so long as they sentence harshly." Dissenting Op. at 75. It is instead that district courts enjoy substantial discretion in sentencing regardless of whether they sentence above or below the guidelines — exactly what our precedents say. [18]  See Mateos, 623 F.3d at 1366; Irey, 612 F.3d at 1188–89; Shaw,

---

that unpublished opinion adequately sends her message about her position on the sending-a-message theory.

[18] The dissent attempts to bolster its argument with dicta from separate opinions of another judge and a former judge of this Court and the views of two of the more than 1.2 million attorneys in this country. The attempt fails.

First, the dissent discusses at length Judge Martin's concurrence in the judgment in United States v. Early, 686 F.3d 1219 (11th Cir. 2012). See Dissenting Op. at 55, 68, 75–77 & n.11, 83. Judge Martin based her concurring opinion's argument in part on a statement that, as of 2012, she had "found [no cases] in which we vacated an upward variance from the Sentencing Guidelines on reasonableness grounds." Early, 686 F.3d at 1223 (Martin, J., concurring in the judgment). We do not question the good faith of our colleague in making that statement, but the

45

fact is that the <u>Valdes</u>, <u>Lopez</u>, and <u>Gardner</u> decisions, all vacating upward variance sentences as unreasonable, were on the books well before 2012 when <u>Early</u> was decided. <u>See</u> <u>Valdes</u>, 500 F.3d at 1291 (decided in 2007); <u>Lopez</u>, 343 F. App'x at 484 (decided in 2009); <u>Gardner</u>, 255 F. App'x at 475 (decided in 2007).

Next, the dissent suggests that Judge Barkett "identified the same problem" as Judge Martin "even before <u>Irey</u> was decided," pointing to Judge Barkett's separate opinion in <u>United States v. Docampo</u>. Dissenting Op. at 75 n.10; <u>see also</u> 573 F.3d 1091, 1110 (11th Cir. 2009) (Barkett, J., concurring in part and dissenting in part). The dissent quotes very carefully and selectively from Judge Barkett's <u>Docampo</u> opinion to make that argument, as it must because what she actually argued in it is not the position the dissent advances. In <u>Docampo</u>, the defendant was sentenced at almost the exact mid-point of the advisory guidelines range. <u>Docampo</u>, 573 F.3d at 1093, 1095 (affirming sentence of 270 months, just below the midpoint of Docampo's guidelines range of 248 to 295 months). And so Judge Barkett's argument — which she made just after the language the dissent quotes — was that "[w]e should . . . be willing to find that, in a case that warrants it, a <u>within-guidelines</u> sentence is greater than necessary to serve the objectives of sentencing." <u>Id.</u> at 1110 (Barkett, J., concurring in part and dissenting in part) (emphasis added; quotation marks omitted). Here, of course, the basis of the dissent's position is that a within-guidelines sentence — and <u>only</u> a within-guidelines sentence — is reasonable. <u>See, e.g.</u>, Dissenting Op. at 56–60 (arguing that the district court's failure to give the guidelines "real weight" renders Rosales-Bruno's sentence unreasonable). Both Judge Barkett's opinion in <u>Docampo</u> and the dissent in this case are wrong.

Finally, the dissent cites two pieces of what it refers to as "scholarly commentary" that it believes "echo[]" Judge Martin's concern. Dissenting Op. at 76 n.11; <u>see also</u> Adam Shajnfeld, <u>The Eleventh Circuit's Selective Assault on Sentencing Discretion</u>, 65 U. Miami L. Rev. 1133 (2011); Daniel N. Marx, <u>Unwarranted Disparity in Appellate Review of Non-Guidelines Sentences for Substantive Reasonableness</u>, 29 No. 2 Westlaw J. White-Collar Crime 1 (2014). Well, it is at least commentary. In his article, lawyer Shajnfeld makes the same error as the dissent and Judge Martin, claiming that we have never found a sentence "unreasonably severe." Shajnfeld, <u>supra</u>, at 1155. He ignores <u>Valdes</u>, <u>Lopez</u>, and <u>Gardner</u> all of which predate his article. <u>See</u> <u>Valdes</u>, 500 F.3d at 1291 (decided in 2007); <u>Lopez</u>, 343 F. App'x at 484 (decided in 2009); <u>Gardner</u>, 255 F. App'x at 475 (decided in 2007). And it is passing strange that the dissent would rely at all on an article whose central premise is that <u>Irey</u> — which our dissenting colleague joined in full — was wrongly decided. <u>See generally</u> Shajnfeld, <u>supra</u>.

Attorney Marx's article echoes Judge Martin more literally, quoting the same section of her opinion that the dissent quotes. Marx, <u>supra</u>, at 7 (quoting <u>Early</u>, 686 F.3d at 1223 (Martin, J, concurring in the judgment)); <u>see</u> Dissenting Op. at 76. But it appears unlikely that Judge Martin, writing about this Court in 2012, could have been talking about the same cases Marx has in mind, because his article, which focuses on sentences in white-collar crime cases, discusses what he calls an "unwarranted disparity" between two cases decided in 2014 — one by the Sixth Circuit and the other by the D.C. Circuit. <u>See generally</u> Marx, <u>supra</u>. (comparing <u>United States v. Musgrave</u>, 761 F.3d 602 (6th Cir. 2014) and <u>United States v. Ransom</u>, 756 F.3d 770 (D.C. Cir. 2014)). Other than quoting Judge Martin's separate opinion in <u>Early</u>, Marx's article mentions our circuit only in passing, saying that it is one of the circuits that have "vacated below-

46

560 F.3d at 1238; Williams, 526 F.3d at 1322; see also Dissenting Op. at 68

("District courts clearly enjoy a wide range of sentencing discretion after our

decisions in Irey and Pugh . . . ."). And district courts use their "wide range of

sentencing discretion" to sentence below the guidelines range more than eleven

times as often as they do to sentence above it.[19]

The numbers also refute the dissent's argument when we compare the rate at

which we vacate upward variance sentences with the rate at which we vacate

downward variance ones. We have vacated only one-eighth of one percent

(0.13%) of downward variance sentences that district courts have imposed, while

we have vacated more than a third of a percent (0.36%) of upward variance

sentences. In other words, an upward variance sentence has been more than twice

as likely to be found unreasonable as a downward variance sentence — exactly the

opposite of what the dissent believes. The message that we have sent, if any, is not

guidelines sentences for white-collar offenders as being substantively unreasonable." Marx, supra, at 6 (quotation marks omitted). We are indeed one of several circuits that have done that. The article fails to even mention our cases vacating upward variances. Instead, it relies on a 2012 report that it states "did not cite any cases in which appeals courts had vacated above-guidelines sentences in fraud cases as being substantively unreasonable." Id. (emphasis added). That is not true. Both the report and the article citing it came out after our 2007 decision in Valdes, where we vacated as substantively unreasonable an upward variance sentence for a bank-fraud conviction. See 500 F.3d at 1292 ("Nelson Valdes pled guilty and was convicted of bank fraud . . . .").

[19] The dissent contends that this makes no difference, because "[j]ust because district courts can vary above the Guidelines with virtually no scrutiny does not mean that district courts will vary above the Guidelines with regularity." Dissenting Op. at 83. So the dissent concedes that district courts are not heeding the message it believes our decisions are sending. Okay.

47

"that we are more likely to vacate a lenient sentence than a harsh one," Dissenting Op. at 82, but just the opposite.

The dissent does not challenge any of our decisions vacating sentences as unreasonably short, and it is easy to understand why.[20] Appendix B to this opinion is a table listing all of the decisions in which this Court has vacated a downward variance sentence as unreasonably short during the nine years between 2006 and the current date. Although we have vacated four times as many downward variance sentences (twelve) as upward variance sentences (three), remember that there were more than eleven times as many downward variance sentences imposed (9,307) as upward variance sentences (828). See App'x A. If we had been vacating downward and upward variances at the same rate, we would have vacated more than thirty-three downward variances (the three upward variances times eleven equals thirty-three) instead of only twelve.

And as Appendix B shows, seven of the twelve cases in which we vacated sentences as unreasonably short involved serious crimes where the sentencing court had varied all the way down to no jail time at all. Those probation-only cases include fraud crimes in which the losses ranged from hundreds of thousands of dollars to 1.4 billion dollars. E.g., United States v. Hayes, 762 F.3d 1300 (11th

---

[20] Indeed, our dissenting colleague participated in deciding three of those cases. See United States v. Kuhlman, 711 F.3d 1321 (11th Cir. 2013); Irey, 612 F.3d 1160 (en banc); United States v. Hendrick, 324 F. App'x 867 (11th Cir. 2009) (unpublished).

48

Cir. 2014); United States v. Livesay, 587 F.3d 1274 (11th Cir. 2009). They also include a case where a law enforcement officer's sentence included no jail time even though he had been convicted for beating a handcuffed and unresisting arrestee and then locking him in a hot car. United States v. Hooper, 566 F. App'x 771 (11th Cir. 2014) (unpublished).

Of the remaining five cases in which we vacated as unreasonable downward variance sentences, two were cases in which the defendant had committed a serious crime but received virtually no jail time. In both cases the custodial term was little more than a fig leaf — and a tiny one at that — insufficient to cover the naked unreasonableness of the sentence. In one of those cases, a participant in a massive nine-year securities fraud that had resulted in more than a billion dollars in losses for shareholders had been sentenced to only seven days in detention. See United States v. Martin, 455 F.3d 1227 (11th Cir. 2006). And in the other, a defendant who had defrauded a bank out of nearly $500,000 had been sentenced to detention in the custody of the United States Marshal for only five hours, to be served either the same day as sentencing or whenever convenient, to be followed by probation. See United States v. Crisp, 454 F.3d 1285 (11th Cir. 2006). That was not so much a detention sentence as it was a minor delay in dinner plans. The point is, where we have vacated downward variance sentences as unreasonably short, we have

49

done so because they really were unreasonably short given the facts and circumstances of the cases including, most notably, the crimes.

Our decisions simply do not show, as the dissent believes, that we review below guidelines sentences with especially close scrutiny, searching for reasons to vacate them.  Instead, we regularly reject reasonableness challenges by the government to downward variance sentences after applying the same neutral principles that we applied in <u>Irey</u> and other decisions.  See, e.g., <u>United States v. McBride</u>, 511 F.3d 1293, 1295, 1297–98 (11th Cir. 2007) (affirming a sentence of 84 months, which was a downward variance from the guidelines range of 151 to 188 months, for a defendant who possessed 981 images and 45 videos of child pornography); <u>United States v. Gray</u>, 453 F.3d 1323, 1323–25 (11th Cir. 2006) (affirming a sentence of 72 months, which was a downward variance from the guidelines range of 151 to 188 months, for a defendant who distributed child pornography); <u>United States v. Williams</u>, 435 F.3d 1350, 1353–55 (11th Cir. 2006) (affirming a sentence of 90 months, which was a downward variance from the guidelines range of 188 to 235 months, for a defendant who sold five grams of crack cocaine); <u>United States v. Neufeld</u>, 223 F. App'x 887, 888–90 (11th Cir. 2007) (unpublished) (affirming a sentence of 48 months, which was a downward variance from the guidelines range of 135 to 168 months, for a defendant who conspired to distribute MDMA); <u>United States v. Halsema</u>, 180 F. App'x 103,

103–05 (11th Cir. 2006) (unpublished) (affirming a sentence of 24 months, which was a downward variance from the guidelines range of 57 to 71 months, for a defendant who possessed child pornography); United States v. Vawter, 167 F. App'x 101, 101–03 (11th Cir. 2006) (unpublished) (affirming a sentence of 6 months, which was a downward variance from the guidelines range of 24 to 30 months, for a defendant who kited checks).

To summarize, the dissent's underlying theory is that Rosales-Bruno is the victim of what it claims is a bias in favor of longer sentences because, even though we have gotten the law right, the results of our decisions have signaled to district courts that we are more likely to affirm upward variance sentences than downward variance ones. The primary problem with the theory is that the facts established by the undisputed data show that no such signal has been sent or received. The message that the results of our decisions have sent is that in our substantive review of sentences we defer to the district courts' broad discretion regardless of whether they sentence above or below the guidelines range, except in the rare instances where they impose a clearly unreasonable sentence. And the district courts' sentencing behavior shows that they have not received the phantom message the dissent fears we have sent. Since Booker, the district courts in this circuit have imposed eleven times as many downward variances as upward variances, and they

have done so at a steadily increasing rate.  To quote the eminent logician Mark Twain:  "How empty is theory in presence of fact!" [21]

## VI.

After considering and giving reasonable weight to each of the relevant § 3553(a) factors, the district court in this case imposed an upward variance sentence.  The sentence did not exceed the outer bounds of the wide range of discretion that district courts are afforded.  Given all of the relevant facts and circumstances, the sentence is not unreasonable.

**AFFIRMED.**

---

[21] Mark Twain, <u>A Connecticut Yankee in King Arthur's Court</u> 420 (1st ed. 1889).

Instead of questioning the accuracy of any of the sentencing data cited in this opinion, the dissent quotes the old cliché that "[t]here are three kinds of lies: lies, damned lies, and statistics." Dissenting Op. at 83 n.14.  That hackneyed formulation does not fit here because the sentencing facts and sentencing review facts cited in this opinion are not mere statistical extrapolations. Given how clearly the actual facts refute its thesis, the dissent should instead be bemoaning "facts, damned facts, and more facts."

CORRIGAN, District Judge, concurring in the result:

Eighty-seven months imprisonment is a very long sentence in an illegal reentry case where this Court has previously determined that the guidelines range is 21-27 months. I was concerned that, in arriving at the exact same 87 month sentence on remand that he had previously imposed (the high end of the now-discredited guidelines range), the district judge did not pay sufficient heed to this Court's decision and did not consider the guidelines as corrected. However, Rosales-Bruno has not asserted this ground, or any other procedural irregularity, on appeal. As to the only ground actually raised on appeal, whether the 87 month sentence is substantively reasonable, I agree that the "sentence did not exceed the outer bounds of the wide range of discretion that district courts are afforded." Maj. Op. at 52. Thus, I concur in the result. I think it unnecessary to the decision and unwise for me, as a visitor, to join in the important debate between Chief Judge Carnes and Judge Wilson regarding Eleventh Circuit sentencing precedent.

WILSON, Circuit Judge, dissenting:

For illegally reentering the United States, a crime with no statutory minimum and a base Guidelines range of 0–6 months, Rosales-Bruno was sentenced to more than 7 *years* in prison. In imposing this sentence, the district court more than tripled the upper end of the applicable Guidelines range. The justifications supporting this major variance are insufficient, and this sentence—the product of a clear error in judgment—is "greater than necessary[] to comply with the purposes set forth" in 18 U.S.C. § 3553. *See United States v. Irey*, 612 F.3d 1160, 1187, 1189 (11th Cir. 2010) (en banc). Therefore, I dissent.

## I.

For three primary reasons, I conclude that the district court abused its discretion in imposing an 87-month sentence on remand, after we previously vacated Rosales-Bruno's initial 87-month sentence. *See id.* at 1188–89; *United States v. Rosales-Bruno*, 676 F.3d 1017, 1024 (11th Cir. 2012). First, despite a massive, 60-month, 68-percent decrease in the upper end of the advisory range resulting from this court's opinion vacating Rosales-Bruno's initial sentence, the sentence imposed at Rosales-Bruno's resentencing did not decrease by a single day. Under the circumstances, it is clear that the district court failed to consider the Guidelines as required under 18 U.S.C. § 3553(a)(4). Second, the sentence imposed—more than three times the upper end of the Guidelines range—is the

product of a substantial upward variance in an entirely unremarkable case.

Sentencing so harshly in ordinary cases will inevitably create wide sentencing

disparities, contrary to congressional intent. *See* 18 U.S.C. § 3553(a)(6). Third,

Rosales-Bruno was convicted of illegally reentering the United States, where his

daughter lives and where he previously found gainful employment. In concluding

that this crime warranted a sentence of more than 7 years' imprisonment, the

district court failed to appropriately consider the nature and circumstances of the

crime for which Rosales-Bruno was being sentenced as required under 18 U.S.C. §

3553(a)(1).

"In . . . cases such as *Irey* . . . , we vacated sentences on the ground that they

failed in effect to give 'real weight' to the Guidelines or to adequately reflect the

Guidelines' policy statements and underlying concerns." *United States v. Early*,

686 F.3d 1219, 1224 (11th Cir. 2012) (Martin, J., concurring in the judgment).

The same is true here. Adherence to *Irey* (vacating a sentence that was too low)

thus requires vacatur (of a sentence that is too high, like this one).[1]

---

[1] I do not need to reach whether the Majority opinion is correct in finding that this court's review is limited to substantive reasonableness or whether Rosales-Bruno's sentence also warrants vacatur for procedural error. To the extent procedural error may be narrowly characterized as whether the district court stated that it considered the factors and did not err in calculating the Guidelines, I agree that no such error occurred. If, however, procedural error includes giving insufficient weight to the Guidelines or our prior decision, then those issues, however labeled, are squarely before us.

In his opening brief, Rosales-Bruno argues that none of the Guidelines factors account for the major variance imposed on remand and that "[t]he coincidence of the vacated sentence and the sentence imposed on remand" make it "quite clear that the district court intended to bypass

## A.

Sentencing is highly subjective, and without standardization, sentencing based on the § 3553(a) factors is unpredictable and disparate. That is why the Guidelines were created. *See Irey*, 612 F.3d at 1181. And, while the Guidelines are no longer mandatory, *see Booker v. United States*, 543 U.S. 220, 226, 125 S. Ct. 738, 746 (2005), they remain incredibly useful. As the Supreme Court put it, "[t]he district courts . . . must consult th[e] Guidelines and take them into account when sentencing." *Id.* at 264, 125 S. Ct. at 767. Or, as we put it in *Irey*, "though not bound by the [G]uidelines, a sentencing court may not give them so little consideration that it amounts to not giving any real weight to the Guidelines range in imposing the sentence." 612 F.3d at 1217 (internal quotation marks omitted). That is exactly what occurred here. Indeed, we will rarely be confronted with circumstances that so clearly prove the district court's failure to give the Guidelines "real weight."

this Court's published opinion with or without sufficient justification." For these reasons, Rosales-Bruno avers that his sentence was "unreasonable" and "unsupported by the record." Thus, regardless of whether the grounds for vacating Rosales-Bruno's sentence discussed here are labeled as "procedural" or "substantive," the issues were not waived and are therefore before us. And, of course, the irregularities just quoted from Rosales-Bruno's brief necessarily implicate substantive reasonableness concerns, even if some of the irregularities with his sentence could technically fall under the heading "procedural error." *Compare Gall v. United States*, 552 U.S. 38, 51, 128 S. Ct. 586, 597 (2007) ("failing to consider the § 3553(a) factors" is procedural error), *with Irey*, 612 F.3d at 1189 (failing to consider relevant Guidelines factors, giving irrelevant factors significant weight, or committing a clear error of judgment in considering the factors is substantively unreasonable).

Initially, the district court calculated a 70–87 month Guidelines range and, concluding that an upward variance was not warranted, the district court sentenced Rosales-Bruno at the top of that range. We vacated that sentence because the district court mistakenly believed that Rosales-Bruno had been convicted of a violent felony and applied a 16-level enhancement as a result of that error. *Rosales-Bruno*, 676 F.3d at 1024.

At resentencing, without the erroneous violent-felony enhancement, the Guidelines range decreased from 70–87 to 21–27 months, meaning that instead of facing a sentence of 7.25 years, Rosales-Bruno faced a sentence under the correctly calculated Guidelines of, at most, 2.25 years. However, despite this substantial decrease in the applicable Guidelines range, Rosales-Bruno received the *exact same* 87-month sentence as before. To re-impose the sentence we initially vacated, the court had to radically depart from its initial determination that Rosales-Bruno did not deserve an upward variance, this time concluding that he in fact deserved a variance—and a major one, at that, as the 87-month sentence imposed required a 60-month upward variance, more than tripling the upper end of the Guidelines range.

It is difficult to ignore the uncanny resemblance between the district court's initial sentence and the sentence imposed on remand, and I have little doubt that if the Guidelines had been correctly calculated the first time around, Rosales-Bruno

57

would have been sentenced to 27 months.  Nothing in the record at Rosales-Bruno's initial sentencing hearing suggests that the court viewed Rosales-Bruno as the type of defendant who warranted an upward variance at all, let alone such a significant one.  And between Rosales-Bruno's initial sentencing and his resentencing, the only changes that occurred cut in favor of a lower sentence.  Under the Guidelines, Rosales-Bruno was no longer deemed a violent felon, and his advisory range decreased by 60 months, or roughly 68 percent.  Despite these changes, Rosales-Bruno's sentence did not decrease by a single day.

The conclusion to be drawn from a sentence that does not change based on such a substantial decrease in the Guidelines range is that the Guidelines were given no weight at all, requiring vacatur under *Irey*.  *See* 612 F.3d at 1217.  Ordinarily, it is difficult to tell just how much (or, in this case, how little) weight is given to any particular sentencing factor because the Guidelines are but one of many factors that the court must take into account.  Here, however, one of the variables—the Guidelines range—is perfectly isolated, as nothing else changed between Rosales-Bruno's first sentencing and his second.  The fact that such a dramatic decrease in the Guidelines had no impact on the sentence imposed shows clearly that the Guidelines were given no weight at all, which, aside from requiring vacatur under *Irey*, is entirely incompatible with Congress's command to consider the Guidelines when imposing a sentence.  *See* 18 U.S.C. § 3553(a)(4).

Of course, the Majority opinion suggests that, from the very beginning, the sentencing judge thought that 87 months was the correct sentence for Rosales-Bruno; the district court came up with an 87-month sentence all on its own, based on experience, common sense, and good judgment. But this sentence, 87 months' imprisonment, did not come from the district court's judgment or experience. It came from the Sentencing Guidelines—or, more accurately, from a miscalculation of the Guidelines. The Majority opinion rewrites history in suggesting that, regardless of the Guidelines, the district court was always going to impose an 87-month sentence, even if it had calculated the Guidelines correctly the first time around.

Indeed, the Majority opinion even asserts that the best evidence of what the district court would have done the first time around is what the court did the second time around on remand. Not so. The best evidence of what the court would have done the first time around is what the court *did* the first time around, which was to sentence Rosales-Bruno to the upper end of the Guidelines range. Again, the number 87 was not a product of the sentencing court's judgment; it was a product of the Guidelines. There is no persuasive explanation in the record as to why a criminal defendant, whom the district court in fact decided to sentence within the Guidelines in the first instance, suddenly became a defendant requiring a triple-upward variance on remand.

59

Further, concluding that a massive decrease in the Guidelines range should have at least *some* influence on the sentence imposed is not the same as suggesting that the Guidelines range should be mandatory in violation of *Booker*. I suggest only what our binding precedent in *Irey* has already held: that Congress's command to respectfully consider the Guidelines includes giving "real weight" to the Guidelines, and that by imposing the exact same sentence despite a 68-percent decrease in the Guidelines, the district court clearly did not give the Guidelines the "real weight" they deserve. *See Irey*, 612 F.3d at 1217–18.

This limited proposition stops far short of treating the Guidelines as mandatory. There is an obvious difference between finding an abuse of discretion here—where a district court that already found a within-Guidelines sentence to be appropriate subsequently disregarded a massive decrease in the advisory range— and making the Guidelines mandatory.[2] If the evidence before us is not enough to establish that the district court failed to adequately weigh the Guidelines, then no evidence ever would be, in which case *Irey* would have to be rewritten, and 18 U.S.C. § 3553(a)(4) might as well not exist.

**B.**

---

[2] And, as discussed in more detail in Part I.C., it is not the mere fact that the district court *varied* from the Guidelines on remand that draws my criticism; rather, it is "the degree" and "extent" of the variance with which I am properly concerned. *See Gall*, 552 U.S. at 47, 128 S. Ct. at 595.

60

The district court's decision to sentence Rosales-Bruno to more than three times the upper end of the advisory range even though he falls in the "heartland to which the Commission intend[ed] [the 21–27 month] Guidelines [range] to apply" is further evidence that the court abused its discretion. *See Kimbrough v. United States*, 552 U.S. 85, 109, 128 S. Ct. 558, 574–75 (2007) (internal quotation marks omitted). We have held that "'closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range fails properly to reflect § 3553(a) considerations even in a mine-run case.'" *Irey*, 612 F.3d at 1188 (quoting *Kimbrough*, 552 U.S. at 109, 128 S. Ct. at 575). This is just such a case, as the primary basis for the variance was Rosales-Bruno's criminal history, which was already reflected in the applicable Guidelines range. *See, e.g.*, *United States v. Lopez*, 343 F. App'x 484, 486 (11th Cir. 2009) (per curiam) (vacating an above-Guidelines sentence because the district court abused its discretion "[b]y focusing only on [the defendant's] criminal history, without providing *any other* justification as to the need to deviate almost fifty percent above the high end of the guideline range" (footnotes omitted)). As in *Lopez*, the only basis in the record for the district court's substantial upward variance is a rote recitation of the criminal history portion of Rosales-Bruno's presentence report. This information was already factored into the Guidelines calculation.

61

Rosales-Bruno's base offense level was 8.  U.S.S.G. § 2L1.2(a).  He then received a 2-level reduction for acceptance of responsibility.  *Id.* § 3E1.1(a).  A base offense level of 6 translates to a Guidelines range of 0–6 months in prison.  But that was not the offense level or Guidelines range applicable to Rosales-Bruno.  He had felony convictions to his name, so his offense level increased to 10, *id.* § 2L1.2(b)(1)(D), increasing the applicable Guidelines range from 0–6 to 6–12 months.  In addition to being a felon, Rosales-Bruno was convicted of violating a variety of traffic laws and driving while intoxicated on several occasions.  These prior convictions placed Rosales-Bruno in criminal history category V.

And the Guidelines account for all of this, as Rosales-Bruno's recidivism is the precise characteristic that landed him in category V.  That categorization increased the applicable Guidelines range again, this time from 6–12 months to 21–27 months.  Thus, when creating the 21–27 month advisory range applicable in this case, the Commission knew it was dealing with illegal reentrants just like Rosales-Bruno, who have a prior felony conviction and at least 10 criminal history points.

Accordingly, this Guidelines range already reflects the fact that Rosales-Bruno is a repeat criminal who has done reprehensible things.  After all, it is hard to imagine a category V defendant who is not a repeat criminal or a felon who has not done reprehensible things.  The Commission designed the Guidelines to punish

such defendants more harshly than others, by increasing offense levels from 6 to 10 and by increasing criminal history categories from I to V.  In short, as a result of repeatedly breaking the law and doing reprehensible things (at least once), illegal reentrants like Rosales-Bruno face a Guidelines range of 21–27 months, rather than 0–6 months.

Nothing in the record suggests that Rosales-Bruno is any worse than other convicted-felon, category V illegal reentrants, let alone so much worse that the high end of his advisory sentencing range should be tripled.  We have previously vacated an above-Guidelines sentence for similar reasons.  *See United States v. Valdes*, 500 F.3d 1291, 1292 & n.2 (11th Cir. 2007) (per curiam) (vacating in part because "[m]any of the bases for the district court's sentence *were already accounted for* in calculating the Guidelines range" (emphasis added)).[3]  Why, then, did the district court sentence Rosales-Bruno to more than triple the upper end of an advisory range that was specifically designed for convicted-felon illegal reentrants with similar patterns of recidivism?

---

[3] In reaching our conclusion in *Valdes*, we relied on *United States v. McVay*, 447 F.3d 1348, 1357 (11th Cir. 2006), which was subsequently abrogated by the Supreme Court, *see Gall*, 552 U.S. at 46, 128 S. Ct. at 594.  But when Valdes appealed the sentence imposed on remand, we had the opportunity to clarify that, even after *Gall*, a defendant's "*criminal history alone* would not justify an upward departure as such behavior is accounted for through [the defendant's] criminal history category."  *United States v. Valdes*, 298 F. App'x 927, 930 (11th Cir. 2008) (per curiam) (emphasis added).

The Majority opinion attempts to answer this question by noting that Rosales-Bruno is "an outstanding candidate for an upward variance from the advisory guidelines range" primarily because he is a category V criminal, placing him among the worst 13.1 percent of illegal reentrants. Maj. Op. at 32–38. But it makes no sense to suggest that a person is "an outstanding candidate" for being treated three times *harsher* than other category V criminals because he *is* a category V criminal. Being a category V criminal does no more than make Rosales-Bruno an outstanding candidate to be treated *as a category V criminal*, which, in this case, means being sentenced to somewhere between 21 and 27 months' imprisonment. *See Valdes*, 500 F.3d at 1292 n.2; *Valdes*, 298 F. App'x at 930 (indicating that a district court abuses its discretion by imposing an upward variance based solely on prior convictions that are already incorporated into a defendant's criminal history category).

Quite simply, nothing in the record suggests that Rosales-Bruno falls outside the "heartland" of convicted-felon, category V illegal reentrants. *See Kimbrough*, 552 U.S. at 109, 128 S. Ct. at 574–75. The Majority's response—that Rosales-Bruno falls outside the "heartland" of illegal reentrants because he is a category V recidivist—misses the point entirely. When the Supreme Court referenced the "heartland" in *Kimbrough*, and when we referenced the "mine-run case" in *Irey*, 612 F.3d at 1188, the point was not to compare the defendant being sentenced to

64

all other defendants who committed the same underlying offense.  The point was, and is, that we must compare the defendant being sentenced to other defendants "to which the Commission intend[ed] individual Guidelines to apply."  *Kimbrough*, 552 U.S. at 109, 128 S. Ct. at 574–75.

After all, the purpose of considering the "heartland" or the "mine-run" case is "to avoid excessive sentencing disparities," *id.* at 107, 128 S. Ct. at 574 (internal quotation marks omitted), "among defendants *with similar records* who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6) (emphasis added).  That purpose is not served by comparing Rosales-Bruno to other generic illegal reentrants, most of whom fall in lower criminal history categories and thus face lower Guidelines ranges.  Congress clearly *wants* sentencing disparities between category I illegal reentrants with no prior felonies, on the one hand, and convicted-felon, category V illegal reentrants, on the other, because these two types of illegal reentrants do not have "similar records," and thus, a sentencing disparity between the two is entirely warranted.  *See id.*

So, again, the fact that Rosales-Bruno has a worse criminal record than most other illegal reentrants does not place him outside the relevant "heartland."  Of course he has a worse criminal record.  That is why the Guidelines place him in criminal history category V and increase his advisory range accordingly.  But in considering whether Rosales-Bruno falls outside the "heartland" for purposes of

65

justifying an upward variance from the sentencing range applicable to category V illegal reentrants, we must compare Rosales-Bruno to defendants who have similar records and thus are treated similarly under the Guidelines.

Properly understood, then, the question of whether Rosales-Bruno falls "outside the heartland to which the Commission intend[ed] individual Guidelines to apply," *Kimbrough*, 552 U.S. at 109, 128 S. Ct. at 575 (internal quotation marks omitted), can only be answered by comparing Rosales-Bruno to the average category V illegal reentrant with a felony conviction.[4]  In other words, it is only by comparing Rosales-Bruno to people "*with similar records* who have been found guilty of similar conduct" that we can avoid unwarranted sentencing disparities. 18 U.S.C. § 3553(a)(6) (emphasis added).  And the record here does not show that "there was something unusual, either about [Rosales-Bruno] or the circumstances surrounding [his illegal reentry], that warranted a different sentence" than the one

---

[4] The Majority insists that I place an unreasonable burden on district courts by expecting them to know the characteristics of the "average" category V illegal reentrant with a base offense level of 10.  The burden I would place on sentencing courts is no different than—and, indeed, is essential to carrying out—the burden placed on sentencing courts by Congress, which directs them to consider the need to avoid unwarranted sentencing disparities between defendants with similar records. *See* 18 U.S.C. § 3553(a)(6).  It would be impossible to avoid unwarranted disparities between defendants with similar records—such as, for example, defendants in the same criminal history category—without having some idea what the typical, "heartland," "mine-run" category V criminal was like.  By insisting that district courts consider the "average" defendant with a particular offense level and criminal history category, I insist only that district courts use their common sense and experience to ensure that defendants with similar records who commit similar crimes are sentenced similarly.  This calls on district court judges to use good judgment, not to conduct a statistical analysis.

advised by the Guidelines for other convicted-felon, category V illegal reentrants. *See Irey*, 612 F.3d at 1182.

Indeed, while I do not mean in any way to condone Rosales-Bruno's lengthy criminal history, I suspect that the criminal history of most convicted-felon, category V criminals is as bad or worse. The district court insisted, as does the Majority opinion, that Rosales-Bruno lacked proper respect for the law, needed to be deterred, and presented a risk of harm to the public. *See* 18 U.S.C. § 3553(a)(2)(A)–(C). All of that is true, but all of that is equally true of other convicted-felon, category V illegal reentrants. These concerns explain why the Commission increased Rosales-Bruno's advisory range from 0–6 months to 21–27 months, just as it did for all other convicted-felon, category V illegal reentrants. But these concerns do nothing to explain why the district court then more than tripled the upper end of that range—a range the Commission designed for people just like Rosales-Bruno.

In short, Rosales-Bruno is a "mine-run" convicted-felon, category V illegal reentrant, and it is clear that "the sentencing judge varie[d] from the Guidelines based solely on the judge's view that the Guidelines range fail[ed] properly to reflect § 3553(a) considerations." *Irey*, 612 F.3d at 1188 (quoting *Kimbrough*, 552 U.S. at 109, 128 S. Ct. at 575). Allowing district courts to triple the upper end of the Guidelines range in ordinary cases will lead inevitably to unwarranted

67

sentencing disparities in direct contravention of Congress's purpose in passing 18 U.S.C. § 3553(a)(6). In "cases such as *Irey* and *Pugh*, we vacated sentences on the ground that they failed . . . to adequately reflect the Guidelines' policy statements and underlying concerns." *Early*, 686 F.3d at 1224 (Martin, J., concurring in the judgment) (citing *United States v. Pugh*, 515 F.3d 1179, 1199–1201 (11th Cir. 2008)). Adherence to this authority requires vacatur here. And concluding that the district court abused its discretion by acting in a way that would lead to wide sentencing disparities in ordinary cases is not at all inconsistent with *Booker*'s prohibition on treating the Guidelines as mandatory. After all, *Booker* did not prohibit us from vacating Pugh's sentence based on the district court's failure to "adequately reflect . . . the sentencing range established by the Guidelines." *Pugh*, 515 F.3d at 1200 (internal quotation marks omitted). District courts clearly enjoy a wide range of sentencing discretion after our decisions in *Irey* and *Pugh*, and they would continue to do so were we to follow the precedent set by those cases, which requires us to vacate Rosales-Bruno's sentence.

## C.

Rosales-Bruno's sentence appears all the more unreasonable in light of the "*degree* of variance . . . and . . . the *extent* of [the] deviation[] from the Guidelines," which we are free to consider. *Gall*, 552 U.S. at 47, 128 S. Ct. at 595 (emphasis added). The 60-month upward variance Rosales-Bruno received,

68

resulting in a sentence more than three times the upper end of the Guidelines range, "[w]hether considered in absolute or percentage terms, . . . is a 'major' variance in the legal parlance of sentencing law." *Irey*, 612 F.3d at 1196. Instead of spending roughly two years in prison, as will most convicted illegal reentrants with similar criminal records, Rosales-Bruno will spend the better part of a decade behind bars.

The Supreme Court has made clear that, when variances are imposed, the district court's justification must be "sufficiently compelling to support the degree of the variance," with "a major departure" requiring "a more significant justification than a minor one." *Gall*, 552 U.S. at 50, 128 S. Ct. at 597. While the Supreme Court has precluded formulaic proportionality requirements or a rule that permits variances only under extraordinary circumstances, it remains our duty to "see that the justification [for a variance] is sufficiently compelling" to "support the degree of the variance." *Irey*, 612 F.3d at 1187 (internal quotation marks omitted).[5] But the "justifications" supporting the variance imposed here amount to no more than a recitation of characteristics that are common to most convicted-felon, category V illegal reentrants. These justifications are "[in]sufficiently compelling to support the degree of the variance." *Id.* (internal quotation marks omitted). Indeed, if these justifications were sufficient, then virtually any category

---

[5] *Irey* candidly recognizes the internal tension in the rule that the reason for a variance must be sufficiently compelling to support the degree of the variance but that a proportionality requirement is prohibited. *See* 612 F.3d at 1186–87 & n.14.

V defendant—who by definition would have a long criminal record that is sure to contain sordid details casting the defendant in a highly unflattering light—could be sentenced to three times the upper end of the advisory range, undermining the Guidelines' primary purpose of preventing unwarranted sentencing disparities.

In reaching this conclusion, I am not seeking to require an unprecedented degree of explicit comparison between offenders before a district court may sentence a defendant. All I would require is that the sentencing judge give a credible justification for a major variance from the Guidelines beyond factors that are typical of defendants subject to the same advisory range. This is precisely what is required by the Supreme Court and by Chief Judge Carnes's opinion for this court in *Irey*, where we said Irey's sentence was too low. *See* 612 F.3d at 1196 ("[T]he requirement is that the justification be 'sufficiently compelling to support the degree of the variance.'" (quoting *Gall*, 552 U.S. at 50, 128 S. Ct. at 597)). The degree of a variance is a factor that is independently significant and that here weighs heavily in favor of reversal; the Supreme Court has reiterated that our review for substantive reasonableness requires us to "take into account the totality of the circumstances, including the extent of any variance from the Guidelines range," *Gall*, 552 U.S. at 51, 128 S. Ct. at 597, as "the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant," *id.* at 41, 128 S. Ct. at 591. Because the district court imposed a major

70

variance in a "mine-run" case, in the absence of sufficiently compelling justifications for any variance, let alone such a major one, I would vacate Rosales-Bruno's unreasonably harsh sentence.  *See Irey*, 612 F.3d at 1186–87.

**D.**

Section 3553(a)(2)(A) requires that a sentence "reflect the seriousness of the offense . . . and provide just punishment for *the offense*."  18 U.S.C. § 3553(a)(2)(A) (emphasis added).  The district court's consideration of this factor was clearly unreasonable.  It is critical here to recall that Rosales-Bruno is not being sentenced for abusing his girlfriend or for driving drunk.  He has already been punished for those crimes, and his punishment under the Guidelines for the instant crime has already been increased substantially as a result of those past offenses.

He is being sentenced for illegal reentry under 8 U.S.C. § 1326,[6] which is a relatively low-level offense.[7]  Further, it is undisputed that Rosales-Bruno's

---

[6] Rosales-Bruno was convicted of illegal reentry in violation of 8 U.S.C. § 1326(a). Subsections (b)(1)–(2), which provide for enhancements based on prior convictions, are sentencing enhancements, not different crimes.  *See, e.g.*, *Almendarez-Torres v. United States*, 523 U.S. 224, 226–27, 230, 118 S. Ct. 1219, 1222, 1224 (1998) (describing § 1326(b) as "a penalty provision" that "does not define a separate crime").

[7] The Majority accurately observes that illegal reentry under 8 U.S.C. § 1326 is subject to a two-year maximum sentence, but that, pursuant to § 1326(b)(1), the statutory maximum increases to ten years for illegal reentrants like Rosales-Bruno who were deported following a felony conviction.  Again, however, the Guidelines account for Rosales-Bruno's prior felony conviction, as evidenced by the fact that the upper end of his advisory range, 27 months, exceeded the statutory maximum for a simple violation of § 1326 without a sentencing upgrade under § 1326(b)(1).  So, it is perfectly clear that the applicable Guidelines range was already

commission of the offense was routine and unremarkable.  For category I offenders, the crime carries the lowest range the Guidelines have to offer: 0–6 months.  It is thus striking that the district court mentioned the nature and circumstances of the instant offense as a factor making an 87-month sentence appropriate.  In contrast, the Commission believes that the essential nature and circumstances of the illegal-reentry offense, by themselves, make at most a 6-month sentence appropriate,[8] suggesting that an 87-month sentence is wildly inappropriate.  The district court offered no basis for disagreeing with this assessment.  This factor clearly cuts—and cuts hard—against the reasonableness of the district court's decision.

Indeed, consideration of the circumstances surrounding Rosales-Bruno's illegal reentry into the United States makes a 60-month upward variance seem outrageous.  Rosales-Bruno has a daughter in the United States, and he apparently reentered the United States to resume gainful employment in the citrus processing industry.  Of course, it is illegal for Rosales-Bruno to be in the same country as his

adjusted to reflect the increased seriousness of Rosales-Bruno's offense.  And it is well worth noting that Rosales-Bruno's illegal reentry fell into the statutory mid-range of seriousness, not at the upper end of the spectrum as one might expect in a case where the district court imposed such a massive upward variance. *Compare* 8 U.S.C. § 1326(b)(1) (punishing illegal reentry following deportation for a felony to a maximum of 10 years' imprisonment), *with* § 1326(b)(2) (punishing illegal reentry following deportation for an aggravated felony to a maximum of 20 years' imprisonment).

[8] Adjusting only for his prior felony conviction, Rosales-Bruno's offense level was 8, which carries advisory ranges beginning at 0–6 months, depending on criminal history category.

child and to continue working here as he had before he was deported, but spending more than 2 years in prison for this crime certainly seems like punishment enough. And spending more than 7 years in prison for this offense is plainly too much.  *See* 18 U.S.C. § 3553(a)(2)(A).

***

On balance, the § 3553(a) factors clearly do not support an above Guidelines sentence in this case, and varying so significantly above the Guidelines based on facts about Rosales-Bruno's history that are common to most people in the applicable Guidelines range was clearly even more unreasonable.  *See, e.g.*, *Gall*, 552 U.S. at 51, 128 S. Ct. at 597 (requiring reviewing courts to consider "the totality of the circumstances, including the extent of any variance from the Guidelines range").  Rosales-Bruno is far from an outlier among convicted-felon, category V illegal reentrants.  If anything, by virtue of his gainful employment and decreasing pattern of criminality, he appears to be among the less dangerous, less depraved, and more productive portion of his criminal history category.[9]  Yet he was sentenced as if he were much, much, much worse.  If a district court does not abuse its discretion by tripling the upper end of a Guidelines range in a "mine-run"

---

[9] I do not mean to suggest that Rosales-Bruno deserved a downward variance, but there are more facts in the record to support a downward variance than to support trebling the Guidelines.  That is because, unlike the aggravating circumstances counting against Rosales-Bruno (his criminal history), the *mitigating* circumstances (his seeming desire to be in the same country as his daughter and source of employment as well as his decreasing pattern of criminal behavior) are not necessarily factored into the Guidelines range.

73

case where the Guidelines already incorporate and account for the defendant's worst characteristics, it is difficult to imagine any circumstances under which we would find an abuse of discretion because a sentence is too harsh. Unlike the Majority, I am left with the definite and firm conviction that the district court committed a clear error of judgment, and I would vacate Rosales-Bruno's sentence and remand for resentencing within the Guidelines.

## II.

We have never vacated a sentence because it was too high, imposing a sentencing ceiling on remand. By contrast, on numerous occasions, we have vacated sentences because they were too low and imposed a sentencing floor. *See, e.g.*, *Irey*, 612 F.3d at 1224–25 & n.46 (concluding that no sentence less than 30 years would suffice); *Pugh*, 515 F.3d at 1204 (holding that a sentence of probation without imprisonment or supervised release was—and would be—unreasonable); *see also United States v. Livesay*, 587 F.3d 1274, 1279 (11th Cir. 2009) ("Not only do we hold that the particular sentence imposed below is unreasonable, but we also hold that *any* sentence of probation would be unreasonable . . . ."); *United States v. McVay*, 294 F. App'x 488, 490 (11th Cir. 2008) (per curiam) (prohibiting the district court from imposing a sentence without prison time). This forces me to believe that we are grading harshness and lenience on different scales. By failing to adhere to *Irey* and *Pugh* in this upward variance case, the Majority opinion

74

reinforces this unstated double standard.  It is true that we *say* all sentences are

meaningfully reviewed for reasonableness, but in practice, it seems that only

lenient sentences are subject to vacatur on purely substantive grounds.  The

message that we are sending to the district courts by this precedent is that they

enjoy virtually unfettered sentencing discretion, so long as they sentence harshly.

In other words, while we say otherwise, we are in reality reading a "severity

principle" into sentencing that should not be there.  *See Irey*, 612 F.3d at 1196–97

(explaining that § 3553(a) supports neither a "parsimony principle" nor a "severity

principle").

## A.

Our case law has been so one-sided that we have convinced at least one

member of this court, Judge Martin, that we do not actually place an upper limit on

sentencing discretion, despite our pretensions to the contrary.  That is, she believes

that we have been so obvious in applying our unwritten "severity principle" that it

is now the law of our circuit.[10]  In *Early*, Judge Martin stated that our precedent

"teaches deference to . . . any variance above the Guideline range, no matter how

---

[10] Judge Barkett (now retired) identified the same problem even before *Irey* was decided. In *United States v. Docampo*, she explained that "we essentially pose two separate questions: (1) Is the sentence *enough* punishment? and (2) Is the sentence *too much* punishment?  Appellate courts have had no difficulty finding unreasonableness when asking the former. . . . Our appellate sentencing review should not develop into a one-way ratchet upwards."  573 F.3d 1091, 1110 (11th Cir. 2009) (Barkett, J., concurring, in part, and dissenting, in part).

75

large," so long as it is under the statutory maximum, of course. [11]  686 F.3d at 1223

(Martin, J., concurring in the judgment).  The Majority teaches the same lesson.

Judge Martin then articulated the two different standards of review that she

sees being applied depending on whether a sentence is harsh or lenient:

> My reading of these cases tells me that in considering sentences *above* the Guideline range, we look only to whether the sentencing court seemed to consider the § 3553(a) factors and we ignore whether the court might have disregarded one of the factors or weighed the factors in an unreasonable way.  In contrast, for downward variances, we show no such deference and instead scrutinize how a sentencing court applied each and every § 3553(a) factor.  We even go so far as to decide for ourselves whether the factors were weighed correctly.
>
> . . . In downward variance cases such as *Irey* . . . , we vacated sentences on the ground that they failed in effect to give real weight to the Guidelines or to adequately reflect the Guidelines' policy statements and underlying concerns. . . .
>
> . . . In sum, even though our case law purportedly requires a significant justification to support a major departure from the Guidelines, the panel's review of Mr. Early's 116 percent upward variance evinces little indication that such a requirement even applies here.

*Id.* at 1223–25 (citations and internal quotation marks omitted).  Unmistakably,

that requirement does apply here. [12]  I agree with Judge Martin's summary of our

---

[11] In a sign that others have noticed the dichotomy Judge Martin described in our case law, her concern is echoed in scholarly commentary.  *See* Adam Shajnfeld, *The Eleventh Circuit's Selective Assault on Sentencing Discretion*, 65 U. Miami L. Rev. 1133, 1133 (2011) (claiming that we "unfairly wield[] a single-edged sword, capable of striking what is perceived as an unduly lenient sentence yet impotent against an unduly harsh one"); *see also* Daniel N. Marx, *Unwarranted Disparity in Appellate Review of Non-Guidelines Sentences for Substantive Reasonableness*, 29 Westlaw J. White-Collar Crime 1, 6–7 (2014) (describing the disparity in appellate review of sentences, including Judge Martin's commentary on the Eleventh Circuit's approach).

standard of review as applied to lenient sentences but disagree with her to the extent that she suggests any other standard applies to harsh sentences.  Thus, I believe that in upward variance cases such as this, just as in downward variance cases such as *Irey*, "we vacate[] sentences [when] they fail[] in effect to give 'real weight' to the Guidelines or to adequately reflect the Guidelines' policy statements and underlying concerns."  *Id.* at 1224.  As discussed above, the district court here failed to give "real weight" to the Guidelines and imposed a sentence that does not reflect the Guidelines' purpose of eliminating sentencing disparities between similarly-situated defendants.  Because the principles that led us to vacate Irey's sentence compel vacatur of Rosales-Bruno's sentence, and because those principles apply in upward variances cases just as much as they do in downward variance cases, I cannot find that the sentence imposed here was reasonable.

## B.

The Majority opinion disputes that we have adopted a severity principle in our review of sentencing decisions, citing three cases which, in the Majority's view, prove that we have vacated overly-harsh sentences as substantively unreasonable.  These cases indicate, however, that the sentences were not actually vacated because they were too long.

---

[12] I reiterate that my position would not deprive sentencing courts of the substantial discretion they enjoy post-*Booker*.  I agree with our decision in *Early* to affirm the sentence imposed even though it was more than two times the upper end of the Guidelines range.

77

In the only published case, *Valdes* (a three paragraph, per curiam opinion),

the defendant was sentenced to 108 months' imprisonment, far above the upper

end of the advisory range.  500 F.3d at 1292.  On appeal, we held that "the reasons

discussed were inadequate to support an extraordinary variance."  *Id.*  This opinion

does not, however, prove that we have indeed vacated a sentence because it was

too long.  Instead of holding, as we did in *Irey*, that "no sentence less than [the

advisory sentence] is sufficient," 612 F.3d at 1225, in *Valdes*, we held that "the

reasons discussed were inadequate," 500 F.3d at 1292.  As we recognized in *Irey*,

"the adequacy of a district court's . . . sentence explanation is a classic *procedural*

issue, not a substantive one."  *Irey*, 612 F.3d at 1194 (emphasis added).  Thus,

*Valdes* based vacatur at least in part on procedural, not substantive grounds.[13]

The distinction is critical because *Valdes*, unlike *Irey*, <u>left open</u> the

possibility that the district court could impose the same sentence on remand if a

more thorough explanation were offered.  Again, in *Irey*, it did not matter what

---

[13] The Majority opinion suggests that there is an important distinction to consider between substantive and procedural reversals; that the remand in *Valdes* based on "the reasons discussed" is a substantive ground, whereas remand based on "the discussion of the reasons" would have rendered it procedural.  My point is not to quibble over labels.  Instead, my point is that remanding because "the reasons discussed were inadequate" leaves open the possibility that there were other reasons that were not discussed that *could be* adequate to support the sentence imposed.  *See Valdes*, 500 F.3d at 1292.  In other words, on remand, the district court was free to impose the same sentence, provided that additional reasons were discussed or developed in the record.  And it is worth noting that, although the district court did not impose the exact same sentence on remand, it again varied significantly above the Guidelines, and we affirmed.  *See Valdes*, 298 F. App'x at 930–31 (affirming an 84-month sentence, 33 months above the upper end of the Guidelines range).  Thus, I reiterate: we have not expressly vacated a sentence because it was too long or too harsh, but we have done so because a sentence was too short.

reasons the district court gave for its downward variance or whether it gave those reasons (as indeed it did); no sentence explanation could render any downward variance substantively reasonable in that case, and we instructed the district court to sentence Irey within the advisory range. *See Irey*, 612 F.3d at 1224–25 & n.46 (requiring the district court to impose a sentence of 30 years on remand).

Nor does our unpublished opinion in *Lopez*, 343 F. App'x 484, signal the same warning against harsh sentencing as cases such as *Irey* signaled against lenient sentencing. In vacating Lopez's sentence, we explained that "the judge's ability to [deviate above the guideline range despite the conviction's role in helping to dictate that range] does not then give free rein to impose any sentence above without first *adequately justifying* that decision." *Id.* at 486 n.1 (emphasis added). As with *Valdes*, then, our decision in *Lopez*, which rested on "the adequacy of a district court's . . . explanation," was, at least in significant part, "a classic procedural [decision], not a substantive one." *Irey*, 612 F.3d at 1194; *see also Gall*, 552 U.S. at 51, 128 S. Ct. at 597 ("failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range" is procedural error).

Further, regardless of whether the Majority opinion is correct that *Lopez* represents vacatur on substantive grounds alone, that decision, which was unpublished, did very little to eliminate any unwritten severity principle in our law.

79

And if *Lopez* applied the standard in this circuit for vacating harsh sentences, then it *strongly* supports reversal here.  After all, in *Lopez*, we held that the district court abused its discretion "[b]y focusing only on Lopez's criminal history, without providing *any other* justification as to the need to" vary above the Guidelines.  343 F. App'x at 486.  That is precisely what happened in this case.  Accordingly, if *Lopez* means what the Majority opinion claims, then Rosales-Bruno's sentence is also substantively unreasonable.

Thus, *Valdes* and *Lopez* only strengthen my contention that Rosales-Bruno's sentence should be vacated.  In those cases, as here, the district court varied above the Guidelines based on factors that were already incorporated into the Guidelines without providing any other justification for varying upward so substantially.  *See Valdes*, 298 F. App'x at 930 (reaffirming our initial holding in *Valdes* that the defendant's "criminal history alone would not justify an upward departure as such behavior is accounted for through his criminal history category"); *Lopez*, 343 F. App'x at 486 (vacating the defendant's sentence because the court "focus[ed] only on [the defendant's] criminal history").  If *Valdes* and *Lopez* are distinguishable from this case, it is only because the variance here is *more* severe, and thus less justifiable and less reasonable, than the variances in those cases.

80

There is another reason that *Valdes* and the third case the Majority opinion cites, our unpublished opinion in *United States v. Gardner*, 255 F. App'x 475 (11th Cir. 2007) (per curiam), do not alleviate my concern that we are developing a severity principle in sentencing.  In *Valdes*, we vacated the sentence because "the reasons discussed were inadequate to support an *extraordinary* variance."  500 F.3d at 1292 (emphasis added).  Similarly, in *Gardner*, we vacated the above-Guidelines sentence because "[t]he extraordinary upward variance . . . was not supported by extraordinary circumstances."  *See* 255 F. App'x at 476–77.

The rule underlying those decisions is no longer good law.  *Valdes* and *Gardner* cited *McVay*, 447 F.3d 1348, for the proposition that "a district court's imposition of a sentence that falls far outside the Guidelines range must be supported by *extraordinary* circumstances."  *Valdes*, 500 F.3d at 1292 n.2 (emphasis added); *see Gardner*, 255 F. App'x at 476 (citing *McVay* for the same proposition).  But *McVay*'s "extraordinary circumstances" requirement, upon which our holdings in both *Valdes* and *Gardner* were based, was explicitly abrogated by the Supreme Court in *Gall*, 552 U.S. at 47, 128 S. Ct. at 595 ("We reject . . . an appellate rule that requires 'extraordinary' circumstances to justify a sentence outside the Guidelines range.").  Thus, neither *Valdes* nor *Gardner* proves that we have vacated a sentence because it was too long.  They prove only that we have vacated a sentence when the district court failed to adequately justify a

81

variance with "extraordinary circumstances," which district courts are no longer required to do.

Consequently, to the extent the cases cited by the Majority opinion do reverse at least in part on substantive grounds, those same grounds plainly support reversal in this case. And my point remains: we have never expressly vacated a sentence as substantively unreasonable because it was simply too long and imposed a sentencing ceiling on remand. By contrast, we have not hesitated to vacate a sentence as substantively unreasonable because it was simply too short, and in many of those cases, we imposed a sentencing floor on remand. *See, e.g.*, *Irey*, 612 F.3d at 1224–25 & n.46; *Pugh*, 515 F.3d at 1204; *Livesay*, 587 F.3d at 1279; *McVay*, 294 F. App'x at 490; *see also* Maj. Op. at App. B.

## C.

If we do not vacate unreasonably long sentences like the one imposed here, district courts can assume that upward variances from the Guidelines are essentially per se reasonable and will not be reversed. At the same time, *Irey* proves that the same is not true of downward variances. Thus, while we are bound to apply the same abuse of discretion standard when reviewing the substantive reasonableness of all sentences, we have given the impression that we are more likely to vacate a lenient sentence than a harsh one, "even where the extent of the variance from the Guideline range was far smaller and where the reasons given by

82

the sentencing court were more substantial." *Early*, 686 F.3d at 1223 (Martin, J.,

concurring in the judgment).  That is not the law of this circuit.  *Irey* articulated

meaningful lower *and upper* limits on a court's sentencing discretion, and that is

why I joined Chief Judge Carnes's majority opinion in *Irey* (even though then-

Chief Judge Edmondson and Judges Tjoflat, Birch, Barkett, and Martin did not).

But it is becoming difficult to believe that those upper limits are actually as

meaningful as we said.

    The statistics cited by the Majority opinion, which show that district courts

vary downward more frequently than they vary upward, do nothing to suggest that

district courts have failed to pick up on the implicit message we have sent.[14]  Just

because district courts *can* vary above the Guidelines with virtually no scrutiny

does not mean that district courts *will* vary above the Guidelines with regularity.

And it should come as no surprise that district courts encounter more defendants

who deserve lenience (in relation to the Guidelines) than harshness.  The

Guidelines do a much better job of incorporating defendants' aggravating

---

[14] Chief Judge Carnes looks to Mark Twain for wisdom—but I recall that Mr. Twain also once proclaimed, "There are three kinds of lies: lies, damned lies, and statistics." *See* Mark Twain, *Chapters from My Autobiography*—XX, 186 N. Am. Rev. 465, 471 (1907) (attributing the expression to Benjamin Disraeli).  The point being that accurate data can be manipulated to make invalid points.  Accordingly, I have no reason to question the accuracy of the sentencing data relied on by the Majority opinion.  Instead, I dispute that a recitation of district court sentencing statistics proves what the Majority claims about how our precedent affects district court decisions.  Contrary to Chief Judge Carnes's implications, statistics about what the district courts do in sentencing does absolutely nothing to counter my concern that, *on appellate review*, we are applying different principles depending on the sentence before us.

characteristics (such as the type, nature, and number of their prior offenses) than they do of capturing the myriad mitigating characteristics about defendants that may justify lenience in a particular case. Thus, the Majority opinion's emphasis on how *district courts* sentence does nothing to counter the point that *this court* appears to apply a severity principle when reviewing harsh sentences on appeal.

Ultimately, I agree to a certain extent with Judge Martin, Judge Barkett, and other commentators who point out that we appear to be applying different standards of review depending on whether a sentence is challenged as too long or too short. I disagree, however, that these different standards of review have become, through misapplication, the law of this circuit. *Irey* articulates the only standard we use to review sentences for substantive reasonableness, and that standard applies regardless of whether a sentence imposed by the district court is challenged as too lenient or too harsh. Applying that standard here requires vacatur of Rosales-Bruno's unreasonably harsh, far above-Guidelines sentence.

## III.

The district court improperly calculated Rosales-Bruno's sentence as 87 months—a within-Guidelines sentence based on an erroneous calculation of the Guidelines. On remand, the court imposed the same sentence—a triple-upward variance. Having examined the record, the factors, and the district court's reasons for imposing this sentence, I am convinced that this major variance was not

84

supported by a significantly compelling justification, nor were the Guidelines given *any* weight or consideration. Thus, I would vacate Rosales-Bruno's sentence and remand for resentencing. Moreover, failure to do so here reinforces the perception that there is a double standard of review in the Eleventh Circuit—giving greater deference to sentences above the recommended Guidelines range than those below.

We recognized in *Irey* that "there is a difference between deference and abdication. If there were no difference, if we did not have a meaningful role to play, we would never have set aside any sentences as substantively unreasonable, but we have." *Irey*, 612 F.3d at 1194 n.20 (citation and internal quotation marks omitted). We have not, however, expressly set aside a sentence because it was too harsh. Refusing to vacate Rosales-Bruno's sentence in these circumstances all but eliminates the already weakened distinction between abdication and deference when we review harsh sentences. Because I believe we meant what we said in *Irey*—namely, that we have a meaningful role to play in reviewing sentences for substantive reasonableness—and because the only way to affirm Rosales-Bruno's sentence is to abdicate, I respectfully dissent.

**APPENDIX A**

**Upward Variance Sentences Vacated as Unreasonable**

| Fiscal Year | Number of Defendants Sentenced | Number of Upward Variances | Number of Upward Variance Sentences Vacated as Unreasonable[2] |
|---|---|---|---|
| 2014 | 6,731 | 92 | 0 |
| 2013 | 6,716 | 94 | 0 |
| 2012 | 6,837 | 100 | 0 |
| 2011 | 6,932 | 116 | 0 |
| 2010 | 6,989 | 107 | 0 |
| 2009 | 7,098 | 99 | 1 |
| 2008 | 7,038 | 94 | 1 |
| 2007 | 6,892 | 60 | 1 |
| 2006 | 6,633 | 66 | 0 |
| **Totals** | | | |
| 2006–14 | 61,866 | 828 | 3 |
| Rate of Vacatur of Upward Variance Sentences: **0.36%** | | | |

**Downward Variance Sentences Vacated as Unreasonable**

| Fiscal Year | Number of Defendants Sentenced | Number of Downward Variances | Number of Downward Variance Sentences Vacated as Unreasonable[2] |
|---|---|---|---|
| 2014 | 6,731 | 1,516 | 2 |
| 2013 | 6,716 | 1,282 | 2 |
| 2012 | 6,837 | 1,278 | 0 |
| 2011 | 6,932 | 1,215 | 1 |
| 2010 | 6,989 | 1,272 | 2 |
| 2009 | 7,098 | 984 | 1 |
| 2008 | 7,038 | 740 | 2 |
| 2007 | 6,892 | 583 | 0 |
| 2006 | 6,633 | 437 | 2 |
| **Totals** | | | |
| 2006–14 | 61,866 | 9,307 | 12 |
| Rate of Vacatur of Downward Variance Sentences: **0.13%** | | | |

---

[1] The data showing the number of defendants sentenced and the number of variances is drawn from U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2014, Eleventh Circuit 11 tbl.8 (2015); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2013, Eleventh Circuit 11 tbl.8 (2014); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2012, Eleventh Circuit 11 tbl.8 (2013); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2011, Eleventh Circuit 11 tbl.8 (2012); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2010, Eleventh Circuit 11 tbl.8 (2011); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2009, Eleventh Circuit 11 tbl.8 (2010); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2008, Eleventh Circuit 11 tbl.8 (2009); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2007, Eleventh Circuit 11 tbl.8 (2008); U.S. Sentencing Comm'n, Statistical Information Packet, Fiscal Year 2006, Eleventh Circuit 11 tbl.8 (2007).

[2] The Sentencing Commission tracks its statistics by fiscal year instead of calendar year. To maintain consistency with that practice for the purposes of this chart we have counted United States v. Gardner, 255 F. App'x 475 (11th Cir. Nov. 23, 2007) (unpublished), as a fiscal 2008 case and United States v. Livesay, 587 F.3d 1274 (11th Cir. Nov. 16, 2009) as a fiscal 2010 case.

**APPENDIX B**

## Downward Variance Sentences Vacated as Substantively Unreasonable

| | Criminal Conduct | Guidelines Range | Sentence Vacated as Unreasonable |
|---|---|---|---|
| United States v. Hayes, 762 F.3d 1300 (11th Cir. 2014) | Business owner masterminded a public corruption scheme — including over $600,000 in bribes to state official in charge of higher education, as well as a money laundering conspiracy — that yielded more than $5 million in ill-gotten profits. | 135–168 months in prison | Probation with no term of imprisonment |
| United States v. Hooper, 566 F. App'x 771 (11th Cir. 2014) | Officer punched a much smaller, handcuffed, unresisting arrestee multiple times in the face before locking him in a hot car. | 70–87 months in prison | Probation with no term of imprisonment |
| United States v. McQueen, 727 F.3d 1144 (11th Cir. 2013) | Corrections officers head-slammed, knuckle-rapped, and beat with a broken broomstick underage inmates, provoking one inmate to fight back, and then "fiercely choked" him while he begged for mercy; officers continued to beat the breathless inmate until he was "curled into a defensive ball," lured him to his feet only to punch him in the nose, and finally choked him until he was unconscious. Officers viciously beat at least five other inmates on separate occasions, leaving injuries that were visible days after the attacks, and then obstructed an investigation into their conduct. | Defendant #1: 15–21 months in prison<br><br>Defendant #2: 151–188 months in prison | Defendant #1: 1 month in prison<br><br>Defendant #2: 12 months in prison |
| United States v. Kuhlman, 711 F.3d 1321 (11th Cir. 2013) | Doctor bilked insurance providers of nearly $3 million in payments over five years for services he knew were not rendered to his patients. He admitted that was motivated by greed, not need. | 57–71 months in prison | Probation with no term of imprisonment |
| United States v. Jayyousi, 657 F.3d 1085 (11th Cir. 2011) | From 1993 to 2001, defendants provided money, recruits, and equipment to radical and violent Islamist terrorist organizations, including al-Qaeda. Defendants were also convicted of conspiracy to murder, kidnap, or maim persons overseas. | 360 months to life in prison | 208 months in prison |

|  | Criminal Conduct | Guidelines Range | Sentence Vacated as Unreasonable |
|---|---|---|---|
| United States v. Irey, 612 F.3d 1160 (11th Cir. 2010) | Remorseless defendant raped, sodomized, tortured, and humiliated over fifty impoverished Cambodian children, some of whom were as young as four years old, over a five year span. He memorialized the cruel acts in more than 1,200 photographs that he then disseminated on the Internet. | 360 months in prison | 210 months in prison |
| United States v. Livesay,[3] 587 F.3d 1274 (11th Cir. 2009) | Senior accounting manager knowingly played a critical role in a massive nine-year securities and mail fraud scheme that resulted in nearly $1.4 billion in losses for shareholders, some of whom had invested their life savings in the company's stock. | 78–97 months in prison | Probation with no term of imprisonment |
| United States v. Hendrick, 324 F. App'x 867 (11th Cir. 2009) | Defendant was guilty of conspiracy, obstruction of justice, and witness tampering. | Unspecified | Probation with no term of imprisonment |
| United States v. Pugh, 515 F.3d 1179 (11th Cir. 2008) | Over a period of several years, defendant knowingly downloaded and distributed to other web users at least 68 images of child pornography, as well as videos of an adult male raping an infant girl and of a young girl performing oral sex on an adult male. Defendant admitted that he once saw an image of a man having sex with a two- or three-year-old who had a dog collar around her neck. There were ten known child victims in the images found on defendant's computer. | 97–120 months in prison | Probation with no term of imprisonment |

---

[3] The defendants in the related cases Livesay, McVay, and Martin, all of which arise out of the same criminal activity, were originally sentenced in 2004, before the Booker decision rendered the Sentencing Guidelines merely advisory. See 543 U.S. at 246, 125 S. Ct. at 757. Their below guidelines sentences therefore were classified as departures (which were allowed before Booker) instead of variances (which were not). Because we reviewed those sentences under the Booker reasonableness standard, we have included them in this chart and in our totals for variances. Doing so increases our rate of vacatur of downward variances, inclusive of the 2014 cases, from 0.10% to 0.13%.

| | Criminal Conduct | Guidelines Range | Sentence Vacated as Unreasonable |
|---|---|---|---|
| United States v. McVay,[3] 294 F. App'x 488 (11th Cir. 2008) | Treasurer of company knowingly participated in a massive nine-year securities and mail fraud scheme that resulted in nearly $1.4 billion in losses for shareholders, some of whom had invested their life savings in the company's stock. | 87–108 months in prison | Probation with no term of imprisonment |
| United States v. Martin,[3] 455 F.3d 1227 (11th Cir. 2006) | CFO knowingly participated in a massive nine-year securities and mail fraud scheme that resulted in nearly $1.4 billion in losses for shareholders, some of whom had invested their life savings in the company's stock. | 108–135 months in prison | 7 days in detention |
| United States v. Crisp, 454 F.3d 1285 (11th Cir. 2006) | Comptroller of construction company knowingly prepared false financial statements that defrauded a bank out of nearly $500,000. | 24–30 months in prison | Probation and 5 hours in custody of U.S. Marshal |

**APPENDIX C**

