[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14606
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cr-00089-SPC-CM-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JORGE OTANO,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(February 9, 2017)

Before JORDAN, ROSENBAUM, and JULIE CARNES, Circuit Judges.

PER CURIAM:

Jorge Otano appeals his 144-month sentence of imprisonment, imposed well

below the advisory guideline range of 292 to 365 months, after pleading guilty to

offenses involving drug distribution, structuring transactions to evade reporting requirements, and money laundering in connection with his and his wife's operation of a pharmacy that filled fraudulent oxycodone prescriptions.[1]  On appeal, Otano argues that his sentence is substantively unreasonable because it creates an unwarranted sentencing disparity and is otherwise greater than necessary to serve the purposes of sentencing under 18 U.S.C. § 3553(a).  After careful review, we affirm Otano's sentence.

## I.

According to the presentence investigation report ("PSR"), Otano and his wife operated St. Jude's pharmacy in Cape Coral, Florida.  From 2009 to 2012, St. Jude's made significant profits through the illegal distribution and sale of prescription medication, specifically oxycodone.

Cooperating sources advised the Drug Enforcement Administration ("DEA") that St. Jude's would fill fraudulent prescriptions that other pharmacies would not. The sources reported that they would bring multiple prescriptions for multiple persons to be filled all at once, sometimes $8,000 to $9,000 worth of oxycodone

---

[1] Without a written plea agreement, Otano pled guilty to the following ten crimes: one count of conspiracy to distribute oxycodone, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C) and 846;  one count of conspiracy to evade transaction reporting requirements, in violation of 31 U.S.C. § 5324(a)(3), (d)(2) and 18 U.S.C. § 371;  three counts of structuring transactions to evade reporting requirements, in violation of 31 U.S.C. § 5324(a)(3) and (d)(2);  one count of conspiracy to launder monetary instruments, in violation of 18 U.S.C. §§ 1956(h) and 1957; and four counts of engaging in monetary transactions in criminally derived property, in violation of 18 U.S.C. §§ 1957 and 2.

being sold to one person. On at least one occasion, Otano instructed a customer on how to convincingly fill out a prescription, including the code and dosage. Even after being visited by detectives in June 2012, St. Jude's continued dispensing large amounts of oxycodone to cooperating sources. Otano raised the prices for oxycodone from time to time, eventually charging up to $12 per pill, as much as three times more than other pharmacies.

Otano and his wife earned well over a million dollars over the course of the conspiracy. The Otanos regularly deposited their profits into multiple bank accounts, structuring the deposits so as to evade federal currency-reporting requirements. The profits were later combined into one particular account, which Otano and his wife used primarily to make personal purchases. For example, the Otanos purchased real estate and automobiles from this main account.

In statements to DEA agents after the execution of a search warrant at St. Jude's in November 2012, Otano admitted knowing that "something was not right." He described the oxycodone customers as unsavory characters who were clearly under the influence of drugs, but he admitted that he filled their prescriptions because he was "making money."

At sentencing, the district court resolved Otano's objections to the PSR and calculated an advisory guideline range of 292 to 365 months of imprisonment. This range was based on a total offense level of 40 and a criminal-history category

of I.  The total offense level consisted of a base offense level of 36 for the amount of oxycodone unlawfully distributed, U.S.S.G. § 2D1.1(a)(5), (c)(2), a two-level enhancement for maintaining a premises for the purpose of distributing a controlled substance, *id.* § 2D1.1(b)(12), and a two-level enhancement for his role in the offense, *id.* § 3B1.1(c).  Otano had no criminal history of note.

Otano requested a total sentence of 84 months of imprisonment.  He argued that a significant term of imprisonment was not necessary in light of his age (53 years at the time of sentencing) and lack of criminal history, that he took full responsibility for his actions, that a long period of imprisonment would work a substantial hardship on Otano's son, who suffered from a debilitating muscular disorder and required 24-hour supervision and care, and that he had already been punished collaterally through the loss of his business and family.

Otano also highlighted the need to avoid unwarranted sentencing disparities, arguing that he should receive the same 84-month sentence as a defendant who had recently been sentenced for similar conduct by a different judge in the Middle District of Florida.  In addition, Otano cited statistics from the United States Sentencing Commission showing that the average sentence for oxycodone trafficking was 53 months of imprisonment.

The government initially requested a sentence within the guideline range, but it later clarified that the court should sentence Otano to no more than 240

4

months of imprisonment, the highest statutory maximum applicable to any of his counts of conviction.[2] The government responded to each of Otano's arguments, asserting in particular that there would be no unwarranted sentencing disparity because the facts of Otano's case were distinguishable from those of the similar case on which Otano relied.

Ultimately, the district court sentenced Otano to a total term of 144 months of imprisonment, with the sentences on all counts with statutory maximums below that total sentence reduced to the respective statutory maximum. This total sentence represented a 148-month downward variance from the low end of his guideline range.

In explaining the reasons for its chosen sentence, the district court extensively reviewed the facts of the case, the parties' arguments, and the statutory sentencing factors listed in 18 U.S.C. § 3553(a). The court referenced Otano's "entire life as a law abiding citizen," his child with special needs, the sentences imposed by a different judge in a similar case, and various facts about the offenses of conviction. The court found that a downward variance was warranted "because

---

[2] Because Otano was sentenced on multiple counts of conviction, the district court retained the discretion to impose a sentence in excess of the statutory maximum applicable to the count with the highest statutory maximum sentence by running the sentences on one or more other counts consecutively. *See* U.S.S.G. § 5G1.2. A court may choose to do so where the sentence imposed on the count carrying the highest statutory maximum is not "adequate to achieve the total punishment." *Id.* § 5G1.2(c), (d). When sentencing on a single count of conviction, however, if the applicable guideline range exceeds the statutory maximum sentence, the statutory maximum sentence simply becomes the guideline sentence. *Id.* § 5G1.1(a).

of the defendant's lack of any prior criminal history and the avoidance of any sentencing disparity," but it concluded that none of Otano's various other arguments presented a "valid reason for a departure." This timely appeal followed.

## II.

We review the reasonableness of a sentence under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007). Generally, we first ensure that the district court committed no significant procedural error before examining whether the sentence is substantively reasonable in light of the totality of the circumstances. *Id*.

The district court is charged with imposing a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing listed in 18 U.S.C. § 3553(a)(2). These purposes are retribution ("to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"), deterrence ("to afford adequate deterrence to criminal conduct"), incapacitation ("to protect the public from further crimes of the defendant"), and rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"). *See* 18 U.S.C. § 3553(a)(2). The court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the types of sentences available, the applicable guideline range, pertinent policy

statements of the Sentencing Commission, the need to avoid unwarranted sentencing disparities, and the need to provide restitution to victims. *Id.* § 3553(a)(1), (3)–(7).

The court must consider all of the § 3553(a) factors, but it may, in its discretion, give greater weight to some factors over others. *United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015). A court can abuse its considerable discretion, however, if it (1) fails to consider relevant factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. *United States v. Irey*, 612 F.3d 1160, 1189 (11th Cir. 2010) (*en banc*). In any given case, there is a range of reasonable sentences from which the district court may choose. *Id.* "The party challenging a sentence has the burden of showing that the sentence is unreasonable in light of the entire record, the § 3553(a) factors, and the substantial deference afforded sentencing courts." *Rosales-Bruno*, 789 F.3d at 1256.

Here, the district court did not abuse its discretion because Otano's 144-month sentence is reasonable. Otano does not argue that the court committed any procedural error, and no error is apparent. As to substantive reasonableness, Otano's arguments on appeal, largely rehashing the mitigation arguments he presented to the district court, amount to little more than a request that we re-weigh

the § 3553(a) factors and decide on an appropriate sentence on our own. But that is not our role. "We may not—it bears repeating—set aside a sentence merely because we would have decided that another one is more appropriate." *Irey*, 612 F.3d at 1191. Rather, we may set aside a sentence only if it "truly is unreasonable." *Id.* Otano cannot make that showing.

Otano's contention that he should have received the same 84-month sentence as an allegedly similarly situated defendant in order to avoid unwarranted sentencing disparities, 18 U.S.C. § 3553(a)(6), is off the mark. For starters, Otano fails to account for the fact that he was sentenced under a different and higher guideline range than the other defendant. The other defendant's guideline range was 235 to 292 months of imprisonment, whereas Otano's range was 292 to 365 months. Both defendants received comparable downward variances of 151 months and 148 months, respectively. So, there does not appear to be any disparity in the extent of variance granted to each defendant.

But even if the need to avoid unwarranted sentencing disparities weighed in favor of imposing an identical 84-month sentence, the court was required to consider the other § 3553(a) factors and was permitted to impose a different sentence based on the application of those factors to Otano's specific case. The Supreme Court has directed sentencing courts to "consider every convicted person as an individual and every case as a unique study in the human failings that

8

sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)).

Consistent with that responsibility, the district court detailed specific facts about Otano and his offense conduct that led the court to conclude, based on the other § 3553(a) factors, that a sentence of 144 months was appropriate. For example, the court cited, among other factors, Otano's extensive efforts to evade reporting requirements and his continuation of unlawful activity after being visited by detectives in June 2012. While Otano asserted that the other defendant's case was similar, the court explained that it did not know the "specifics of the evidence" or the "specifics of the sentencing" in the other case on which Otano relied, so it could not simply impose the same 84-month sentence in Otano's case because "each case has its own nuances."

Based on the § 3553(a) factors as a whole, the court reasonably concluded that a total sentence of 144 months of imprisonment was appropriate. The record reflects that the district court thoroughly considered the guideline range, the § 3553(a) factors, and the parties' arguments for and against mitigation. Ultimately, the district court exercised its discretion to grant a significant downward variance from the guideline range based on Otano's lack of criminal history and the need to avoid unwarranted sentencing disparities, even though the extent of the variance was less than what Otano requested.

But the court concluded that none of Otano's other arguments presented a "valid reason for a departure," and the court sufficiently and cogently explained its reasons for rejecting these arguments. In particular, the court found that Otano had failed to fully accept responsibility for his actions, that he had put his special-needs child in danger by having him present in the pharmacy with large amounts of cash where known drug abusers and sellers were often present, and that the offense conduct was serious and involved extensive efforts to avoid detection.

The weight to be given the § 3553(a) factors, whether great or slight, was a matter for the district court, and the court did not impose a sentence outside the range of reasonable sentences based on the facts of this case. *See Irey*, 612 F.3d at 1190; *Rosales-Bruno*, 789 F.3d at 1254. The reasonableness of the sentence is also supported by the fact that the 144-month sentence was well below the guideline range of 292 to 365 months of imprisonment. *See United States v. Hunt*, 526 F.3d 739, 746 (11th Cir. 2008) (noting that we ordinarily expect sentences within the guideline range to be reasonable).

For these reasons, Otano has fallen far short of showing that the district court imposed a sentence that "truly is unreasonable." *See Irey*, 612 F.3d at 1191. We **AFFIRM**.